Jahan C Sagafi (SBN 224887)
Email: jsagafi@outtengolden.com
Adam L. Koshkin (SBN 320152)
Email: akoshkin@outtengolden.com
Kaelyn Mahar (SBN 338257)
Email: KMahar@outtengolden.com
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810

Michael J. Scimone*
Email: mscimone@outtengolden.com
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
*Admitted Pro Hac Vice
*Attorneys for Plaintiffs and the
Proposed Class and Collective
Members*
[Additional attorneys listed on
following page]

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SABRINA PEREZ, TANNER TOM, ARIC VICKREY, ANDREJ SIMUNAC, and LILYANA AIWAS, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO BANK, N.A., and WELLS FARGO & COMPANY, <br><br> Defendants. | Case No. 2:24-cv-4077 SRM <br><br> PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT <br><br> Judge: Serena R. Murillo <br> Dept.: Courtroom 9B, 9th Floor <br><br> Hearing Date: October 22, 2025 <br> Hearing Time: 1:30 P.M. <br><br> Complaint Filed: 11/30/2023 |

Jennifer Kramer (SBN 203385)
Email:  jennifer@kbhllp.com
**KRAMER BROWN AND HUI LLP**
3600 Wilshire Blvd., Suite 1908
Los Angeles, CA 90010
Telephone: (213) 310-8301
Facsimile: (213) 310-8302

Hunter Pyle (SBN 191125)
Bradan Litzinger (SBN 347813)
Email:   hunter@hunterpylelaw.com;
HUNTER PYLE LAW, PC
505 14th Street, Suite 600
Oakland, California 94612
Telephone: (510) 444-4400
Facsimile:  (510) 444-4410

*Attorneys for Plaintiffs and the Proposed Class
and Collective Members*

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that, on October 22, 2025 at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 5D of the above-captioned Court, located at 350 West First Street, Los Angeles, CA 90012, before the Honorable Serena R. Murillo, Plaintiffs Sabrina Perez, Aric Vickery, Tanner Tom, Andrej Simunac, and Lilyana Aiwas ("Plaintiffs") hereby do and will move the Court for preliminary approval of the Parties' Class, Collective, and PAGA Action Settlement. This motion is unopposed. As discussed in the following memorandum in support of the motion, this motion is made on the grounds that the proposed Settlement is fair, reasonable, and adequate, and is well within the range of approval.

For the reasons set forth below, Plaintiffs respectfully seek an order: (1) preliminarily approving the Settlement; (2) preliminarily certifying the California and Colorado Classes for settlement purposes; (3) appointing Plaintiffs' counsel as Class Counsel and Plaintiffs Tom and Simunac as class representatives for settlement purposes; (4) approving the proposed Notices and notice plan; (5) appointing Rust Consulting, Inc. as the Settlement Administrator; and (6) scheduling a final approval hearing.

This motion is based on this notice of motion and motion; the memorandum in support of the motion; the accompanying Declaration of Michael J. Scimone

i

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

("Scimone Decl.") and the exhibits attached thereto; all matters of which the Court may take notice; and any oral or documentary evidence presented at the hearing on the motion.

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................... 1

II.    FACTUAL BACKGROUND.................................................................. 2

III.   PROCEDURAL BACKGROUND .......................................................... 3

       A.    *Perez v. Wells Fargo* ....................................................... 3

       B.    *Aiwas v. Wells Fargo* ...................................................... 5

IV.    THE PROPOSED SETTLEMENT ......................................................... 5

       A.    Settlement Eligibility........................................................ 6

       B.    Settlement Amount ........................................................... 6

       C.    Release of Claims ............................................................ 8

       D.    Appointment of Class Representatives and Class Counsel.............. 9

       E.    Notice Procedure ............................................................ 10

       F.    Settlement Administration................................................. 11

       G.    Class Representative Service Awards to Be Requested in
             Fee Motion. ................................................................. 11

       H.    Attorneys' Fees and Costs to Be Requested in Fee Motion........... 14

V.     ARGUMENT.................................................................................. 14

       A.    Certification of the Rule 23 Classes Is Proper. ...................... 15

             1.    Rule 23(a) Is Satisfied......................................... 16

             2.    Certification Is Proper Under Rule 23(b)(3)........................ 18

             3.    Plaintiffs' Counsel Should Be Appointed as Class
                   Counsel.......................................................... 19

       B.    The Settlement Is Fair, Reasonable, and Adequate. ...................... 19

             1.    The Settlement was Reached After Contentious
                   Litigation and Arm's-Length Negotiation. ........................... 20

             2.    Plaintiffs Faced Significant Risks........................... 22

             3.    The Settlement Amount is Appropriate. ............................. 26

a.      Recovery for Non-PAGA Claims...............................26

b.      The PAGA Settlement Amount Is
Reasonable...................................................30

4.      The Parties Engaged in Sufficient Discovery to
Make an Informed Decision About Settlement. ...................31

5.      Counsel's Experience and Views Support
Approval.....................................................32

6.      The Court Should Approve the Proposed
Settlement Administrator. .....................................33

C.      The Court Should Approve the Proposed Notices and
Administration Plan...........................................33

VI.     A FINAL APPROVAL HEARING SHOULD BE SCHEDULED..........35

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................ 17, 18, 19

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ........................................................................18

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946) ........................................................................25

*Arredondo v. Southwestern & Pac. Specialty Fin., Inc.*,
   No. 18 Civ. 1737, 2022 U.S. Dist. LEXIS 23758 (E.D. Cal. Feb. 9, 2022) ........22

*Beesley v. Int'l Paper Co.*,
   No. 06 Civ. 703, 2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014)...........13

*Betancourt v. Advantage Human Resourcing, Inc.*,
   No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361 (N.D. Cal. Jan. 28, 2016) ......22

*Billups-Larkin v. Aramark Servs., Inc.*,
   No. 21 Civ. 6852, 2023 U.S. Dist. LEXIS 122756 (N.D. Cal. July 17, 2023)....31

*Bowerman v. Field Asset Servs.*,
   60 F.4th 459 (9th Cir. 2023) ..............................................................25

*Brady v. Deloitte & Touche LLP*,
   No. 08 Civ. 177, 2012 U.S. Dist. LEXIS 42118 (N.D. Cal. Mar. 27, 2012).......23

*Cawthorne v. Rush Truck Ctrs. of Cal., Inc.*,
   No. 17 Civ. 1541, 2019 U.S. Dist. LEXIS 248125 (C.D. Cal. Mar. 18, 2019)...19

*Churchill Vill., LLC v. GE*,
   361 F.3d 566 (9th Cir. 2004)..............................................................34

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992)...............................................................19

*Cotter v. Lyft, Inc.*,
   176 F. Supp. 3d 930 (N.D. Cal. 2016) ................................................26

*Criswell v. Boudreaux*,
   20 Civ. 1048, 2021 U.S. Dist. LEXIS 187438 (E.D. Cal. Sept. 29, 2021)..........21

*DeRosa v. ViacomCBS Inc.*,
   No. 20 Civ. 2965, 2024 U.S. Dist. LEXIS 29602 (C.D. Cal. Feb. 20, 2024)......12

*Dunleavy v. Nadler (In re Mego Fin. Corp. Sec. Litig.)*,
   213 F.3d 454 (9th Cir. 2000)...................................................... 32, 32

*Fleming v. Covidien Inc.*,
   No. 10 Civ. 1487, 2011 U.S. Dist. LEXIS 154590 (C.D. Cal. Aug. 12, 2011)...30

*Galeener v. Source Refrigeration & HVAC, Inc.*,
   No. 13 Civ. 4960, 2015 U.S. Dist. LEXIS 193092 (N.D. Cal. Aug. 20, 2015)...12

*Glass v. UBS Fin. Servs.*,
   No. 06 Civ. 4068, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ........12

*Gould v. Rosetta Stone, Ltd.*,
   2013 U.S. Dist. LEXIS 138921 (N.D. Cal. Sept. 16, 2013) ...............................29

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)..................................................... 15, 16, 17, 19, 20

*Harrington v. Cracker Barrel Old Country Store, Inc.*,
   142 F.4th 678 (9th Cir. 2025) ............................................................23

*Heredia v. Sunrise Senior Living LLC*,
   No. 18 Civ. 1974, 2021 U.S. Dist. LEXIS 42447 (2021) ...................................24

*Hudson v. Libre Tech. Inc.*,
   18 Civ. 1371, 2020 U.S. Dist. LEXIS 84576 (S.D. Cal. May 12, 2020).............21

*Johnson v. Moss Bros. Auto Grp., Inc.*,
  No. 19 Civ. 2456, 2022 U.S. Dist. LEXIS 112361 (2022) ...................................20

*Kudatsky v. Tyler Techs.*,
  2021 U.S. Dist. LEXIS 222313 (N.D. Cal. Nov. 17, 2021) ...............................29

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998)...................................................................30

*Lopez v. Mgmt. & Training Corp.*,
  No. 17 Civ. 1624, 2020 U.S. Dist. LEXIS 70029 (S.D. Cal. Apr. 20, 2020)......13

*Maloney v. Mullen Auto., Inc.*,
  No. 25 Civ. 1187, 2025 U.S. Dist. LEXIS 114767 (C.D. Cal. May 15, 2025) ...16

*Martin v. Monsanto Co.*,
  No. 16 Civ. 2168, 2017 U.S. Dist. LEXIS 135351 (C.D. Cal. Mar. 24, 2017)...19

*McLeod v. Bank of Am., N.A.*,
  No. 16 Civ. 3294, 2018 U.S. Dist. LEXIS 195314 (N.D. Cal. Nov. 14, 2018)...31

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 15, 21

*O'Connor v. Uber Technologies, Inc.*,
  201 F. Supp. 3d 1110 (N.D. Cal. 2016) ...............................................30

*Officers for Justice v. Civil Serv. Com.*,
  688 F.2d 615 (9th Cir. 1982)....................................................................30

*Payala v. Wipro Techs., Inc.*,
  No. 15 Civ. 4063, 2016 U.S. Dist. LEXIS 143651 (C.D. Cal. Aug. 23, 2016)...24

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009)..................................................... 20, 32

*Singh v. Roadrunner Intermodal Servs., LLC*,
  No. 15 Civ. 01497, 2018 WL 2412325 (E.D. Cal. May 29, 2018).....................28

*Singleton v. Domino's Pizza, LLC*,
  976 F. Supp. 2d 665 (D. Md. 2013) ..................................................13

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016) ........................................................................18

*Van Kempen v. Matheson Tri-Gas, Inc.*,
  No, 15 Civ. 66079660, 2017 U.S. Dist. LEXIS 137182 (N.D. Cal. Aug. 25,
  2017)...................................................................................................30

*Walsh v. CorePower Yoga LLC*,
  No. 16 Civ. 5610, 2017 U.S. Dist. LEXIS 163991 (N.D. Cal. Oct. 3, 2017).....13

*Walsh v. CorePower Yoga LLC*,
  No. 16 Civ. 5610, 2017 U.S. Dist. LEXIS 20974 (N.D. Cal. Feb. 14, 2017) .....19

*Walton v. AT&T Servs.*,
  No. 15 Civ. 3653, 2018 U.S. Dist. LEXIS 245928 (N.D. Cal. Feb. 14, 2018) ...12

*Watson v. Tennant Co.*,
  No. 18 Civ. 2462, 2020 U.S. Dist. LEXIS 166823 (E.D. Cal. Sep. 10, 2020)....12

*Williams v. U.S. Bancorp Invs., Inc.*,
  2024 Cal. App. Unpub. LEXIS 7898 (Cal. Ct. App. 2024)...............................23

*Wilson v. Tesla, Inc.*,
  2019 U.S. Dist. LEXIS 112866 (N.D. Cal. July 8, 2019)....................................29

**FEDERAL STATUTES**

28 U.S.C. § 1292 ...................................................................................4

29 U.S.C. § 216 ...............................................................................4, 27

29 U.S.C. § 260 ...................................................................................27

**STATE STATUTES**

Labor Code § 203 .................................................................................27

Labor Code § 226.7 .................................................................................................. 28

Labor Code § 2699 .............................................................................................. 30, 31

**FEDERAL RULES**

Fed. R. Civ. P. 23 ............................................................................................. passim

Fed. R. Civ. P. 30 ....................................................................................................... 5

**FEDERAL REGULATIONS**

29 C.F.R. § 541.203 .......................................................................................... 23, 24

29 C.F.R. § 541.601 ................................................................................................. 25

## I.    INTRODUCTION

Plaintiffs Sabrina Perez, Tanner Tom, Aric Vickrey, Andrej Simunac, and Lilyana Aiwas ("Plaintiffs") seek preliminary approval of a $48,500,000 non-reversionary common fund Settlement of this class, collective, and Private Attorneys General Act ("PAGA") case against Defendants Wells Fargo Bank, N.A. and Wells Fargo & Company ("Wells Fargo"). This Settlement delivers an estimated average gross recovery of $11,468.43 ($104.68 per workweek) to approximately 4,229 bank workers, including more than 51% who are covered by arbitration agreements. Plaintiffs and Defendants are referred to below as "the Parties."

The proposed Settlement readily satisfies Rule 23 for the California and Colorado classes, and the Fair Labor Standards Act's ("FLSA") collective action requirements for the nationwide collective. The Parties have litigated court-authorized notice to the Putative Collective Members,[1] transfer, and a motion to dismiss. Additionally, Plaintiffs have almost fully briefed a request to certify aspects of the 216(b) decision for appeal. After exchanging significant formal and informal discovery, the Parties attended a full-day mediation with experienced mediator Jeffrey A. Ross, culminating in a term sheet on January 31, 2025, and a

---

[1]    Unless otherwise noted, all capitalized terms used in this motion have the same definition as provided in the Settlement Agreement.

fully executed Settlement Agreement on September 3, 2025.[2]

## II.    FACTUAL BACKGROUND

Wells Fargo is a leading financial services provider with approximately $1.9 trillion in assets, operating bank branches across 36 states and in Washington, D.C. Some of those branches employ Senior Premier Bankers ("SPBs"), including Plaintiffs, to provide customer service to affluent clients; sell Wells Fargo clients additional banking services; generate referrals to other Wells Fargo employees like Wells Fargo Advisors' Financial Advisors; and conduct standard banking transactions like opening savings and checking accounts. *See* TAC ¶ 3.

Plaintiffs allege that Wells Fargo misclassified SPBs as exempt from the FLSA overtime provisions. *Id.* ¶ 2. Plaintiffs worked more than 40 hours per workweek to meet sales targets, provide customer service using automated tools, and conduct standard banking transactions without receiving overtime pay. *Id.* ¶ 6. Plaintiff Tom makes these same allegations under Colorado law on behalf of a Colorado class.

In addition, Plaintiff Simunac alleges that Wells Fargo failed to provide proper meal and rest periods and timely pay California Class Members overtime and minimum wages upon separation, all in violation of California law. *Id.* ¶¶ 145-

---

[2]    Plaintiffs will seek approval of the PAGA and the Fair Labor Standards Act ("FLSA") portions of the Settlement Agreement in their final approval motion.

2

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

173.  He also brings an Unfair Competition Law claim.  *Id.* at ¶¶ 174-181.  Plaintiff

Aiwas brings a PAGA action based on the same claims.  *Id.* ¶¶ 182-191.  Wells

Fargo denies all of these allegations.  The Court has not ruled on their merits.

## III.    PROCEDURAL BACKGROUND

### A.    Perez v. Wells Fargo

Plaintiff Perez filed this action in the Northern District of California on

November 30, 2023.  On January 12, 2024, Wells Fargo Bank, N.A. ("WFB")

answered and moved to transfer to the District of New Mexico.

On February 2, 2024, Plaintiffs filed a First Amended Complaint ("FAC")

adding WFB's holding company, Wells Fargo & Company ("WFC"), as well as

Plaintiffs Tom and Vickrey and their claims under the Colorado Wage Claim Act,

and dropping class allegations under the New Mexico Minimum Wage Act based

on Defendants' disclosure that a New Mexico class would not satisfy Rule 23(a)

numerosity.  WFB answered the FAC on February 16, 2024 and WFC moved to

dismiss itself on March 19, 2024.

On March 11, 2024, Plaintiffs sought leave to file a Second Amended

Complaint ("SAC") adding Plaintiff Simunac and class claims under the California

Labor Code and Unfair Competition Law.  The Court granted Plaintiffs' motion

and denied Defendants' motion to transfer without prejudice on March 25, 2024.

Plaintiffs filed the SAC before the Court resolved WFC's Motion to Dismiss, and

WFB answered the SAC on April 10, 2024.

With the SAC on file and the pleadings settled, the Parties litigated three motions: Plaintiffs' Motion for Issuance of Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) ("216(b) Motion"), WFC's renewed Motion to Dismiss the SAC, and WFB's renewed Motion to Transfer Case.  On February 13, 2024, the Parties stipulated to toll the statute of limitations until the Motion to Transfer was decided.  On May 15, 2024, the Northern District transferred the case to this Court.

Following transfer, and after conferring with Wells Fargo, Plaintiffs renewed their 216(b) Motion and filed a Motion to File a Third Amended Complaint, which Wells Fargo opposed.  The motion sought to add Wells Fargo Advisors, which employed the Financial Advisers that Plaintiffs referred clients to, as a joint employer.  On October 23, 2024, the Court denied Plaintiffs' motion to amend and on November 5, 2024, granted Plaintiffs' 216(b) Motion.  The 216(b) order directed notice of the FLSA claims to all SPBs nationwide, including those covered by an arbitration agreement.

After the court granted Plaintiffs' 216(b) Motion, Wells Fargo informed Plaintiffs that it intended to move under 28 U.S.C. § 1292 for leave to appeal the grant of notice to SPBs who signed arbitration agreements.  The Parties stipulated to delay sending notice and to toll the statute of limitations for such SPBs until Wells Fargo's attempted appeal was resolved.

While these motions were pending, the Parties engaged in early discovery.

Both parties propounded and responded to interrogatories and requests for production. Scimone Decl. ¶ 15. Wells Fargo produced nearly 6,500 pages of documents. *Id.* ¶ 41. Plaintiffs conferred with Wells Fargo about deficiencies in the productions and set a date to depose Wells Fargo's Fed. R. Civ. P. 30(b)(6) witness. *Id.* ¶ 42. Plaintiffs also made a substantial document production and responded to interrogatories. *Id.* ¶ 43.

### B.    Aiwas v. Wells Fargo

Soon after the *Perez* Plaintiffs filed their action, Plaintiff Aiwas filed a PAGA case in Alameda County Superior Court, Case No. 24 Civ. 75649, alleging substantially similar claims on behalf of SPBs who worked in California from February 28, 2023, to the present.

On June 16, 2024, Wells Fargo moved to stay Aiwas's action pending the outcome of *Perez*. The Alameda County Superior Court granted that motion on August 20, 2024. Aiwas and her counsel participated in the December 17 mediation with the *Perez* Plaintiffs and joined in the Settlement now before the Court. As discussed above, Plaintiffs filed a stipulated TAC adding Aiwas and her claims to this case on September 4, 2025. Aiwas is currently in the process of dismissing her claims in state court pursuant to the terms of the Settlement.

## IV.    THE PROPOSED SETTLEMENT

The details of the Settlement are set forth in the Agreement, attached as Exhibit 1 to the Scimone Declaration. A summary is set forth below.

5

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

### A.  Settlement Eligibility

The proposed Settlement covers four groups of eligible SPBs: (1) Putative Collective Members employed by Wells Fargo outside California or Colorado from February 22, 2021 through the Release Date[3] (the "Collective Period"), Scimone Decl., Ex. 1 (Settlement) ¶¶ 1.11, 1.52; (2) California Class Members employed by Wells Fargo from March 27, 2020 through the Release Date (the "California Class Period"), *id.* ¶¶ 1.5, 1.6; (3) Colorado Class Members employed by Wells Fargo from February 2, 2021 through the Release Date (the "Colorado Class Period") (together with California Class Members, "Class Members"), *id.* ¶¶ 1.12, 1.13; and (4) PAGA Members employed in California from February 28, 2023 through the Release Date (the "PAGA Period") (collectively, "Eligible SPBs"), *id.* ¶¶ 1.39, 1.41.  Plaintiffs estimate that there are 4,229 eligible SPBs based on data provided by Wells Fargo.  Scimone Decl. ¶ 23.[4]

### B.  Settlement Amount

The $48,500,000 Settlement covers (1) payments to Eligible SPBs; (2) Court-approved Attorneys' Fees of up to one-third of the Total Settlement Amount; (3) Court-approved litigation costs, which Plaintiffs estimate to be

---

[3]  The Release Date is defined as the date on which the Court grants Preliminary Approval of the Settlement.  Scimone Decl, Ex. 1 (Settlement) ¶ 1.54.

[4]  The liability period runs through preliminary approval, so the actual number of eligible SPBs may modestly increase prior to the Release Date.  *Id.* ¶ 1.54.

6

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

approximately $38,794.77; (4) Service Awards to the Named Plaintiffs and Participating Opt-Ins; (5) the PAGA Fund; and (6) settlement administration costs. *Id.*, Ex. 1. (Settlement) ¶ 1.67; *Id.* ¶ 49.  The Total Settlement Amount does not include Employer Payroll Taxes, which Wells Fargo will pay separately.  *Id.*

Participating Class and Putative Collective Members will receive a Settlement Check or, for Class Members if they elect, Electronic Payment for their proportionate share of the Net Fund (after attorneys' fees and costs, service awards, settlement administration costs, and the PAGA Fund are deducted) based on the number of calendar weeks worked as an SPB during the relevant period.  *Id.* ¶¶ 9.6, 9.9.  To calculate individual Settlement Checks, Participating Class and Collective Members will receive a point value for each Eligible Workweek.  *Id.* ¶ 9.6.  California Class Members terminated before March 27, 2021 or who are currently employed will receive 1.9 points for each Eligible California Workweek; California Class Members terminated after March 27, 2021 will receive 2 points for each Eligible California Workweek to account for their claims for late payment of wages upon termination.  *Id.* ¶ 9.6.a.  Colorado Class Members will receive 2.5 points for each Eligible Colorado Workweek and Putative Collective Members will receive 1 point for each Eligible FLSA Workweek.  *Id.* ¶ 9.6(a).  Differing point values account for the different remedies available to Eligible SPBs under federal and state laws.  PAGA Members will be entitled to an additional PAGA Amount

based on weeks worked as an SPB in the PAGA Period.  *Id.* ¶ 9.7.

Payments will be made seven days after Wells Fargo funds the Settlement.
*Id.* ¶¶ 1.18, 1.28, 9.9.  Participating Class and Putative Collective Members will
have 180 days to cash Settlement Checks and will receive a reminder notice 45
days after mailing.  *Id.* ¶ 9.10.

### C.    Release of Claims

Participating Class and Putative Collective Members will receive a
Settlement Check without having to take any action.  Class Members can also elect
electronic payment.  *Id.* ¶ 4.2.  The released claims in this case are limited to the
claims that were or that could have been pled based on facts alleged in the
operative pleadings.  Participating California[5] and Colorado[6] Class Members, as

---

[5]    "Released California Claims" are all California and federal wage and hour
claims pled in the operative Complaint, or that could have been pled based on the
facts alleged in the operative Complaint, and that accrued during Class Members'
or Putative Collective Members' employment as exempt-classified SPBs, relating
back to March 27, 2020, and continuing through the Release Date, whether known
or unknown, including, but not limited to, those arising out of or related to all
claims for unpaid overtime wages, unpaid minimum wages, claims related to the
failure to provide meal and rest breaks, claims related to untimely payment of
wages during employment or upon termination, claims related to the alleged failure
to provide compliant wage statements and/or maintain required records, and all
related claims for penalties, interest, liquidated damages, restitution, injunctive
relief, attorneys' fees, costs, expenses, or any other damages. *Id.* ¶ 1.55.
[6]    "Released Colorado Claims" are defined identically to the Released
California Claims, but for Colorado, and specifically including claims for unpaid
overtime, wage statements and wage notices, and related penalties, interest,
liquidated damages, restitution, injunctive relief, attorneys' fees, costs, expenses,
or other damages.

---

well as PAGA Members,[7] will release their respective state-law claims by operation of the Final Approval Order.  *Id.* ¶¶ 10.2, 10.3.  Collective Members will release FLSA claims[8] when they cash their settlement checks.  *Id.* ¶¶ 10.1, 10.2. Participating Class Members will release the same federal claims upon cashing their settlement check or receipt of electronic payment.

### D.     Appointment of Class Representatives and Class Counsel

By this motion, Plaintiffs move to certify two classes for settlement purposes: the Colorado Class and the California Class.  In certifying these classes, Plaintiffs propose that Plaintiff Simunac be appointed Class Representative for the California Class and Plaintiff Tom be appointed Class Representative for the Colorado Class and that their counsel – Jahan C. Sagafi, Michael J. Scimone, Adam L. Koshkin, and Kaelyn Mahar of Outten & Golden LLP; Hunter Pyle and

---

[7]     "Released PAGA Claims" include all claims relating to penalties under California's Private Attorney General Act ("PAGA") that were alleged, or that reasonably could have been alleged, based on the facts contained in the *Aiwas* Operative Complaint and in Aiwas's LWDA notice letter dated February 28, 2024, and that accrued during PAGA Members' employment as exempt-classified SPBs at any time from February 28, 2023 through the Release Date.  *Id.* ¶ 1.59.

[8]     "Released Collective Claims" are and all wage and hour claims pled in the operative Complaint, or that could have been pled based on the facts alleged in the operative Complaint, and that accrued during Class Members' or Putative Collective Members' employment as exempt-classified SPBs, relating back to February 22, 2021, and continuing through the Release Date, whether known or unknown, including, but not limited to, those arising out of or related to all state and federal claims for unpaid overtime wages and all related claims for penalties, interest, liquidated damages, restitution, injunctive relief, attorneys' fees, costs, expenses, or any other damages  *Id.* ¶ 1.57.

9

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

Bradan Litzinger of Hunter Pyle Law PC; and Jennifer Kramer of Kramer Brown

Hui LLP – be appointed Class Counsel.

### E.    Notice Procedure

Within 21 days of the Preliminary Approval Order, Defendants' will provide

the Settlement Administrator and Plaintiffs' Counsel with the Class List.  *Id.* ¶¶

1.10, 4.1.  Within 35 days of Preliminary Approval, the Settlement Administrator

will send Class Members the Court-approved Notice by mail and personal e-mail,

where available, with a link and/or QR code to the settlement website.  *Id.* ¶ 4.3;

Scimone Decl., Ex. 1 Exs. A-J (Settlement Notices).  Notices to Putative Collective

Members who are not Class Members will be sent contemporaneously with

Settlement Checks.  Scimone Decl., Ex. 1 (Settlement) ¶ 4.3.  The Settlement

Administrator will use all commercially reasonable means to confirm Class and

Putative Collective Members' addresses and obtain new addresses as necessary.

*Id.* ¶ 4.4.  In the event that mail and e-mail Notices are returned as undeliverable,

the Settlement Administrator will send a text message Notice.  *Id.*

Class Members will have 60 days from the initial Notice mailing date or 30

days from the date of re-mailing to object or opt out.  *Id*. ¶¶ 1.4, 5.1, 6.1.  No

unclaimed settlement funds will revert to Wells Fargo; instead, unclaimed funds

will be redistributed to Participating Class and Collective Members, or, if a

redistribution is not economically feasible, the funds will be paid to a *cy pres*

recipient agreed upon by the Parties and approved by the Court.  *Id.* ¶ 9.2(b).

**F.      Settlement Administration.**

The Parties have selected Rust Consulting, Inc. as the Settlement

Administrator.  Scimone Decl. ¶ 44.  Rust estimates that its costs will be

approximately $41,000.00.  *Id.*, Ex. 9 (Rust Bid).  Plaintiffs sought bids from three

settlement administrators before selecting Rust, which has significant expertise,

skill, and experience.  *Id.* ¶ 44.  Rust's anticipated costs are just .08% of the Total

Settlement Amount, which is reasonable given the amount and complexity of the

work to be performed and is in line with administration fees in comparable cases.

*Id.* ¶ 47.

**G.      Class Representative Service Awards to Be Requested in Fee
          Motion.**

Under the Settlement, Plaintiffs Perez, Vickrey, Simunac, and Tom will

request Class Representative Service Awards of up to $25,000 each and Plaintiff

Aiwas will request a Class Representative Service Award of up to $10,000.

Scimone Decl., Ex. 1 (Settlement) ¶ 9.4(a).  The Opt-In Plaintiffs who participated

in discovery, Yitao Huang and Dawn Gatti, will request a Service Award of up to

$5,000 each.  *Id.*  Plaintiffs will present additional argument supporting these

awards in the forthcoming fee motion.

Courts in this District traditionally approve service awards of this amount

and more based on several factors: (1) the actions the plaintiff has taken to protect

the interests of the class, (2) the degree to which the class has benefitted from those

actions, (3) the time and effort that representatives put into the litigation, and (4)

the reasonable fears of workplace retaliation.  *See DeRosa v. ViacomCBS Inc.*, No.

20 Civ. 2965, 2024 U.S. Dist. LEXIS 29602, *6-7 (C.D. Cal. Feb. 20, 2024)

($20,000 service award for $4,000,000 settlement was "fair and reasonable

considering Plaintiff's substantial work interviewing and retaining class counsel,

assisting with discovery, and agreeing to execute a general release of all claims

related to her employment, and restrictions on her future statements on certain

issues"); *Glass v. UBS Fin. Servs.*, No. 06 Civ. 4068, 2007 U.S. Dist. LEXIS 8476,

at *52 (N.D. Cal. Jan. 26, 2007) (approving $25,000 service awards); *Galeener v.*

*Source Refrigeration & HVAC, Inc.*, No. 13 Civ. 4960, 2015 U.S. Dist. LEXIS

193092, at *11 (N.D. Cal. Aug. 20, 2015) (approving service awards of $27,000,

$25,000, and $15,000); *Walton v. AT&T Servs.*, No. 15 Civ. 3653, 2018 U.S. Dist.

LEXIS 245928, at *8 (N.D. Cal. Feb. 14, 2018) (approving $20,000 award);

*Watson v. Tennant Co.*, No. 18 Civ. 2462, 2020 U.S. Dist. LEXIS 166823, at *19

(E.D. Cal. Sep. 10, 2020) ($25,000 service award for $1,100,000 settlement).

The proposed Service Awards are reasonable in light of (a) the value created

by Plaintiffs in initiating and prosecuting this action (factor two, above); (b) the

effort and time they invested to pursue claims on behalf of all Eligible SPBs

(factors one and three); (c) the outstanding result achieved for class members, and

(d) the risks they incurred of adverse action from Wells Fargo, other potential

1  employers, business partners, landlords, and others by virtue of serving as the

2  public face of adversarial litigation against an employer (factor four, as well as

3  broader considerations).

4      <u>First</u>, Plaintiffs made this Settlement possible.  If they had not stepped

5  forward, the litigation would not have occurred, and SPBs likely would have

6  received nothing.  <u>Second</u>, Plaintiffs devoted significant time to this case,

7  including by providing information to assist Plaintiffs' Counsel with pre-suit

8  investigation, supplying Plaintiffs' Counsel with information throughout the

9  litigation, submitting initial disclosures and declarations in support of the motion

10  for court-authorized notice, responding to 32 requests for production of documents

11  and 10 interrogatories, and staying apprised of developments in the case.  Perez

12  Decl. ¶ 7; Vickrey Decl. ¶ 6; Simunac Decl. ¶ 6; Tom Decl. ¶ 6; Gatti Decl ¶ 5;

13  Huang Decl. ¶ 5; Aiwas Decl. ¶¶ 23-26 (Because Aiwas's case was stayed, Wells

14  Fargo did not propound discovery on her).  <u>Third</u>, Plaintiffs assumed considerable

15  reputational risks with respect to their current and future employers by putting their

16  names on a wage and hour complaint.[9]  Their actions potentially exposed them to

17

18  [9]    "[C]ourts recognize the 'unique risks' named plaintiffs in employment class actions face with respect to future employment." *Walsh v. CorePower Yoga LLC*,

19  No. 16 Civ. 5610, 2017 2017 U.S. Dist. LEXIS 163991, at *40 (N.D. Cal. Oct. 3, 2017); *see also, e.g., Lopez v. Mgmt. & Training Corp*., No. 17 Civ. 1624, 2020

20  U.S. Dist. LEXIS 70029, at *30 (S.D. Cal. Apr. 20, 2020) (class representatives "face stigma upon future employment opportunities having sued a former

21  employer"); *Beesley v. Int'l Paper Co.*, No. 06 Civ. 703, 2014 U.S. Dist. LEXIS

13

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

future retaliation and jeopardized their careers in the banking industry.  For Plaintiff Perez, who still works for Wells Fargo, that risk is not hypothetical.  Perez had already filed an Unfair Labor Practice against Wells Fargo related to her protected concerted activity when this case was filed.  Perez Decl. ¶ 9.  Moreover, Plaintiffs' names are prominently visible in public records.  For example, a Google search of "Perez Wells Fargo" or "Simunac Wells Fargo" yields a result on the first page about this litigation.  Scimone Decl. ¶ 26.  <u>Fourth</u>, in contrast to other Eligible SPBs, all Plaintiffs signed a general release of claims in consideration for the service awards.  *Id.*, Ex. 1 (Settlement) ¶ 10.4.  In short, Plaintiffs' participation in the case was imperative to its success, and the requested service awards are reasonable in light of the substantial recovery and applicable precedent.

### H.    Attorneys' Fees and Costs to Be Requested in Fee Motion

The Settlement Agreement contemplates that Plaintiffs may request attorneys' fees of up to one-third of the Total Settlement Amount, plus out-of-pocket costs.  *Id.* ¶ 9.3(a).  Plaintiffs will evaluate the actual amount to be requested when they file their fee petition, in advance of final approval.

## V.    ARGUMENT

---

12037, at *13-13 (S.D. Ill. Jan. 31, 2014) (acknowledging that litigation against one's employer "carries unique risks and fortitude including alienation from employers or peers"); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer).

14

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

Class action settlement approval "involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); *see also* Manual for Complex Litigation §§ 21.632-634 (4th ed. 2004). Preliminary approval requires two elements: <u>first</u>, the court must determine that the settlement class meets the requirements for class certification if it has not yet been certified, *see* Fed. R. Civ. P. 23(a), (b); and <u>second</u>, the court must determine that the settlement is fair, reasonable, and adequate, *see* Fed. R. Civ. P. 23(e)(2). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025–26 (9th Cir. 1998).

## A.    Certification of the Rule 23 Classes Is Proper.

For settlement purposes, the Parties agree to certification of the California and Colorado classes.[10] "The validity of use of a temporary settlement class is not usually questioned." Alba Conte & Herbert B. Newberg, 4 Newberg on Class Actions § 11:22 (4th ed. 2002). The proposed Classes are coextensive with the Classes pled in the operative Complaint and readily satisfy Rule 23's certification requirements. TAC ¶¶ 66, 77.

---

[10]    Wells Fargo has agreed to certification for settlement purposes only. The Agreement provides that this is not an admission by Wells Fargo that a class or collective should be certified for any purpose other than settlement purposes.

1. **Rule 23(a) Is Satisfied.**

<u>First</u>, the proposed classes are sufficiently numerous because there are

approximately 1,269 California Class Members and 190 Colorado Class Members.

Scimone Decl. ¶ 21.

<u>Second</u>, "there are questions of law or fact common to the class." Fed. R.

Civ. P. 23(a)(2). The Ninth Circuit "construe[s]" this requirement "permissively."

*Hanlon*, 150 F.3d at 1019. So long as Class "claims stem from the same source,"

there is sufficient commonality "to satisfy the minimal requirements of Rule

23(a)(2)." *Id*. at 1019-20. There are common issues presented here because

Plaintiffs allege a single policy of classifying all SPBs as exempt from overtime.

Common legal and factual questions about Wells Fargo's pay practices and

Plaintiffs' job duties, such as whether primary job duties were exempt, drive the

liability questions in this litigation.

<u>Third</u>, the Class Representatives are typical of the absent Class Members.

Rule 23(a)(3) typicality requires a finding that the "claims or defenses of the

representative parties [be] typical of the claims or defenses of the class." Fed. R.

Civ. P. 23(a)(3). Under the rule's "permissive" standard, "representative claims

are 'typical' if they are reasonably co-extensive with those of absent class

members; they need not be substantially identical." *Maloney v. Mullen Auto., Inc.*,

No. 25 Civ. 1187, 2025 U.S. Dist. LEXIS 114767, at *8 (C.D. Cal. May 15, 2025)

(quoting *Hanlon*, 150 F.3d at 1020). Here, Plaintiffs, like the Classes they propose

16

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

to represent, worked as SPBs in California and Colorado and were subject to the same policy of exempt classification.  They also allege the same underlying wage and hour violations.  Their claims therefore arise from the same set of facts and legal theories.

Fourth, Plaintiffs have fairly and adequately protected the interests of the classes.  *See* Fed. R. Civ. P. 23(a)(4).  Adequacy is met where class representatives (1) have common, and not antagonistic, interests with unnamed class members; and (2) will vigorously prosecute the interests of the class through qualified counsel.  *See Hanlon*, 150 F.3d at 1020; *cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–27 (1997) (adequacy not satisfied where named plaintiffs' interests were in conflict with absent class members').  Here, Plaintiffs share a common interest with the Class Members in that they allege the same injury and share an interest in vigorous prosecution.  Plaintiffs have devoted substantial time to prosecuting this action.  Scimone Decl., Exs. 2-7 (Plaintiff Declarations).

In addition, Plaintiffs are represented by adequate counsel, satisfying Rule 23(g).  Outten & Golden LLP, Hunter Pyle Law PC, and Kramer Brown Hui PC have extensive experience litigating complex civil rights and employment class actions and have vigorously prosecuted this action on behalf of Plaintiffs and Class Members through jurisdictional litigation, collective certification, written discovery, and mediation.  Scimone Decl. ¶¶ 3-10; Pyle Decl. ¶¶ 5-9.  For these

reasons, Plaintiffs' Counsel satisfy the adequacy requirement of Rule 23(a)(4).

### 2. Certification Is Proper Under Rule 23(b)(3).

Rule 23(b)(3) requires that common questions predominate over individual ones, and that a class action is superior to other available methods for adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3). Both requirements are met here.

The proposed classes are sufficiently cohesive to satisfy predominance. *See Amchem*, 521 U.S. at 623 (Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (cleaned up). Predominance does not require "that each element of [a plaintiff's] claim [be] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (cleaned up). Rather, "[t]he predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). Plaintiffs allege a single policy of classifying all SPBs as exempt from overtime, and their other claims – e.g. meal and rest breaks and timely payments– are derivative of the misclassification question. Common legal and factual questions about Wells Fargo's pay practices and SPBs' primary job duties predominate.

Superiority rests on individual Class Members' desire to bring individual actions and the utility of concentrating the litigation in one forum. *See* Fed. R. Civ. P. 23(b)(3). Here, "it does not appear that many class members seek to

18

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

individually control their cases." *Cawthorne v. Rush Truck Ctrs. of Cal., Inc.*, No. 17 Civ. 1541, 2019 U.S. Dist. LEXIS 248125, at *10 (C.D. Cal. Mar. 18, 2019); *see also Amchem*, 521 U.S. at 615 (cleaned up).  Individual lawsuits from more than 4,000 plaintiffs, for modest damages, would be wasteful and inefficient for the court system compared with a single action.  *See, e.g.*, *Martin v. Monsanto Co.*, No. 16 Civ. 2168, 2017 U.S. Dist. LEXIS 135351, at *27 (C.D. Cal. Mar. 24, 2017).  Because the class mechanism will achieve economies of scale for Class Members and conserve judicial resources, proceeding as a class is superior.

### 3.    Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Adequacy of class counsel depends on (1) work performed on the matter, (2) experience, (3) knowledge of the law, and (4) the resources that class counsel can commit.  *See* Fed. R. Civ. P. 23(g)(1)(A).  Plaintiffs' Counsel readily satisfy these criteria, as set forth above.  *See supra* § V.A.1 (Adequacy); *see also* Scimone Decl. ¶ 22.

### B.    The Settlement Is Fair, Reasonable, and Adequate.

Once the Court has found class certification to be proper, the next step is to assess whether the settlement is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026 (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  The first-stage analysis looks for "obvious deficiencies," with preliminary approval being granted if the settlement is non-collusive and within the range of possible final approval.  *Walsh v. CorePower Yoga LLC*, No.

16 Civ. 5610, 2017 U.S. Dist. LEXIS 20974, at *19 (N.D. Cal. Feb. 14, 2017*)* (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); Alba Conte & Herbert B. Newberg, 4 *Newberg on Class Actions*, § 13.15 (5th ed.).

When considering whether to grant approval, courts "put a good deal of stock in the product of an arm[']s-length, non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (cleaned up). Courts may also assess the following factors, which are assessed in greater detail at final approval: (1) "the strength of the plaintiffs' case"; "the risk, expense, complexity, and likely duration of further litigation"; and "the risk of maintaining class action status throughout the trial"; (2) "the amount offered in settlement"; (3) the extent of discovery completed and the stage of the proceedings"; and (4) "the experience and views of counsel." *Hanlon*, 150 F.3d at 1026 (cleaned up).

### 1. The Settlement was Reached After Contentious Litigation and Arm's-Length Negotiation.

In deciding whether a settlement is fair and reasonable, courts frequently consider the stage of the litigation and the degree of opposition. First, the Settlement is the result of concerted adversarial litigation, including extensive motion practice prior to mediation. *Johnson v. Moss Bros. Auto Grp., Inc.*, No. 19 Civ. 2456, 2022 U.S. Dist. LEXIS 112361, at *10 (finding that the settlement was negotiated at arm's-length because "[p]rior to settling the case, the Parties actively

20

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

litigated this action and had several pending motions.").  The Parties litigated

necessary jurisdictional questions, amendments to the complaint, and notice to the

collective before the Court, in addition to other disputes, including discovery

disputes, the Parties raised and resolved informally.  *See supra* Section III.A.

Second, the Parties reached settlement after eight and a half months of

negotiations facilitated by an experienced third party mediator.  *See Criswell v.*

*Boudreaux*, 20 Civ. 1048, 2021 U.S. Dist. LEXIS 187438, at *8 (E.D. Cal. Sept.

29, 2021) ("[T]he negotiation process was 'fair and full of adversarial vigor,'

reflecting an arm's length negotiation.") (*quoting City of Colton v. American*

*Promotional Events, Inc.*, 281 F. Supp. 3d 1009, 1012 (C.D. Cal. 2017)).  The

negotiations began with a day-long mediation session before experienced mediator

Jeffrey A. Ross, during which the Parties made progress but did not reach a

resolution.  Scimone Decl. ¶ 18.  The Parties agreed to a settlement in principle

only after a month of extended negotiations following the mediation, conducted

through the mediator.  *Id.*  The Parties executed a term sheet and continued

negotiating the terms of a long form settlement agreement for seven months.  *Id.*;

*see Hudson v. Libre Tech. Inc.*, 18 Civ. 1371, 2020 U.S. Dist. LEXIS 84576, at *16

(S.D. Cal. May 12, 2020) ("[I]nvolvement of a mediator, as well as the lengthy and

adversarial nature of the settlement negotiations, are all indicia of the contentious

nature of the underlying negotiations.") (citing *Nat'l Rural Telecomms. Coop.*, 221

21

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

F.R.D. at 528 ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.")).

### 2.    Plaintiffs Faced Significant Risks.

"Approval of a class settlement is appropriate when there are significant barriers plaintiffs must overcome in making their case." *Betancourt v. Advantage Human Resourcing, Inc*., No. 14 Civ. 1788, 2016 U.S. Dist. LEXIS 10361, at *10-11 (N.D. Cal. Jan. 28, 2016) (cleaned up).  Here, Plaintiffs face substantial obstacles to class-wide recovery.

First, more than 51% of SPBs are subject to arbitration agreements that foreclose participating in a class or collective action.  In the absence of a settlement, these agreements, if enforced, would require each of them to file and litigate a time-consuming and potentially expensive individual claim against their employer.  Scimone Decl. ¶ 35.  SPBs compelled to arbitration would have to undertake document production, deposition testimony, and testifying at an arbitration hearing to recover on a claim with a relatively small dollar value.  *Id.*; *see, e.g.*, *Arredondo v. Southwestern & Pac. Specialty Fin., Inc.*, No. 18 Civ. 1737, 2022 U.S. Dist. LEXIS 23758, at *31 (E.D. Cal. Feb. 9, 2022) (granting preliminary approval of settlement where "it may be cost prohibitive for putative class members [bound by arbitration agreements] to pursue wage claims on an individual basis") (citation omitted).  Although Plaintiffs secured notice to these SPBs, Wells Fargo sought to appeal that order.  At the time, courts' ability to direct

1  notice to arbitration-bound workers was at issue was before the Ninth Circuit in

2  *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678 (9th Cir.

3  2025) and presented a serious risk.  Had *Harrington* been decided differently, more

4  than 51% of Putative Collective Members would never have received notice of this

5  action and their claims would likely have expired.  Scimone Decl. ¶ 36.  And even

6  after *Harrington*, it is likely that half the Collective Members who might have

7  opted in to the case would be compelled to arbitration instead.  *Id.*  This would

8  have offered Wells Fargo the opportunity to litigate those cases individually,

9  swamping Plaintiffs with duplicative litigation and allowing Wells Fargo to argue

10  that any difference in outcomes weighed against maintaining collective and class

11  certification.  *Id.*

12       <u>Second</u>, class certification presents a much higher bar than the 216(b) notice

13  requirement.  Although Plaintiffs are confident in the similarity of their claims,

14  courts have declined to certify similar cases.  *See, e.g.*, *Williams v. U.S. Bancorp*

15  *Invs., Inc.*, 2024 Cal. App. Unpub. LEXIS 7898, at *12 (Cal. Ct. App. 2024)

16  (affirming trial court's denial of class certification for financial employees because

17  individualized inquiries were necessary to determine whether the employees met

18  29 C.F.R. § 541.203(b)); *Brady v. Deloitte & Touche LLP*, No. 08 Civ. 177, 2012

19  U.S. Dist. LEXIS 42118, at *21 (N.D. Cal. Mar. 27, 2012) (decertifying a class

20  because the plaintiffs did not show the common questions regarding the

21

23

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

administrative exemption predominated); *Payala v. Wipro Techs., Inc.*, No. 15 Civ. 4063, 2016 U.S. Dist. LEXIS 143651, at *36 (C.D. Cal. Aug. 23, 2016) (denying certification because individual inquiries will be necessary to determine whether class members are actually performing similar duties, and whether those duties fit within the administrative exemption.").  And as noted above, the presence of arbitration agreements would at least have complicated class certification.  *See, e.g.*, *Heredia v. Sunrise Senior Living LLC*, No. 18 Civ. 1974, 2021 U.S. Dist. LEXIS 42447, at *9 (denying class certification based on typicality because the class representatives had not signed arbitration agreements whereas over 85% of the proposed class had).

Third, a trial on the merits would involve significant risks for Plaintiffs on liability and damages.  Scimone Decl. ¶¶ 37-38.  The Department of Labor has issued an exemption regulation that is specific to the financial service industry, which would have focused a jury trial on qualitative questions like whether SPBs exercised independent judgment in "determining which financial products best meet the customer's needs and financial circumstances" or in "marketing, servicing or promoting" the employer's financial products; or, alternatively, whether their "primary duty" was really sales.  *See* 29 C.F.R. § 541.203(b).

This showing would be complicated by the fact that nearly 30% of SPBs earned more than the threshold necessary to qualify as a highly compensated

1   employee.  Scimone Decl. ¶ 37; *see* 29 C.F.R. § 541.601.  That means Wells Fargo

2   only had to prove that these workers "customarily and regularly perform[ed] any

3   one or more of the exempt duties or responsibilities of an executive,

4   administrative, or professionally employee" to establish their status as exempt.  29

5   C.F.R. § 541.601

6        When it comes to damages, Wells Fargo would dispute the number of hours

7   SPBs worked.  Without contemporaneous records (which Wells Fargo did not

8   maintain), Plaintiffs would have to find a way to establish a "just and reasonable

9   inference" about the hours worked by more than 4,000 workers located in branches

10  across the country – a daunting task – and defend that inference against Wells

11  Fargo's rebuttal attempts or its attempts to show that the damages issues were

12  simply too individualized to warrant class treatment.  *Anderson v. Mt. Clemens*

13  *Pottery Co.*, 328 U.S. 680, 687 (1946); *see, e.g.*, *Bowerman v. Field Asset Servs.*,

14  60 F.4th 459, 469 (9th Cir. 2023) (holding that class certification was improper

15  where "individual testimony [was necessary] to establish the existence of an injury

16  and the amount of damages").

17       Clearing all of these hurdles would require long, arduous, and risky litigation

18  through trial, to say nothing of the lengthy appeals process that would surely

19  follow.  Instead, this Settlement delivers substantial relief now, bypassing all of

20  those risks.

21

### 3. The Settlement Amount is Appropriate.

"[P]erhaps the most important factor" courts consider in determining whether to grant preliminary approval is "plaintiffs' expected recovery balanced against the value of the settlement offer." *Cotter v. Lyft, Inc.*, 176 F.Supp.3d 930, 935 (N.D. Cal. 2016) (quotation omitted). Here, the monetary relief provides substantial value to SPBs.

SPBs stand to recover a gross award of approximately $11,468.43 per person or $104.68 per workweek, and a net award (after deductions for attorneys' fees and costs, service awards, administration costs, the PAGA fund) of $7,137.28 per person. Scimone Decl. ¶ 23. This is approximately 33.6% of the compensatory damages (wages, interest, and meal and rest break compensation) SPBs could have recovered at trial, and 16.8% of all recovery when liquidated damages and penalties (compensatory damages plus liquidated damages, Colorado penalties, and waiting time penalties) are included. *Id.* ¶¶ 30, 32. Plaintiffs' Counsel, with the assistance of their in-house data analysts, used Wells Fargo's payroll records to calculate actual damages, meaning the estimated exposure described below is based on a concrete, data-driven analysis. *Id.* ¶¶ 11-12, 27.

#### a. Recovery for Non-PAGA Claims

<u>Unpaid Overtime and Interest</u>. Plaintiffs and other SPBs have reported to Plaintiffs' Counsel that they worked an average of four hours of unpaid overtime per week. *Id.* ¶ 28. Plaintiffs project that this estimate applies to 77% of all

26

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

workweeks, accounting for the likelihood that SPBs did not work over 40 hours in weeks where they took some form of paid time off (e.g. bank holidays, vacations, and other days off).[11]  Applying these assumptions to Wells Fargo's data, Plaintiffs assigned damages for 463,336 workweeks, amounting to approximately **$114,998,438.07** in unpaid overtime wages, plus interest.  *Id.*

Liquidated Damages.  Unless it can show a good faith defense, an employer who violates the FLSA is liable for liquidated damages equal to the unpaid overtime wages.  29 U.S.C. §§ 216(b), 260.  California Class Members are entitled to liquidated damages for violations of California, city, and county minimum wage laws.  In addition, Colorado Class Members are automatically entitled to liquidated damages of 200% for recovery of unpaid wages under the Colorado Wage Claim Act or 300% if Plaintiffs prove willfulness.  C.R.S § § 8-4-109.  Based on the assumptions above, the Settlement Class could have recovered **$131,870,973.32** in liquidated damages if Plaintiffs succeeded in rebutting Wells Fargo's good faith and willfulness defenses.  *Id.* ¶ 29.

Waiting Time Penalties.  Labor Code § 203 provides a penalty of up to thirty days' pay where an employer willfully fails to pay an employee all owed wages at the time of separation.  Using an average 8-hour day, and the 30-day

---

[11]     If there were 11 bank holidays per year, approximately 78% of workweeks would be overtime weeks.

27

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

penalty, Plaintiffs' Counsel estimated waiting time penalties for the California

Class Members to be approximately **$5,382,820.18**. *Id.* ¶ 31.

Meal and Rest Break Penalties.  Labor Code §§ 226.7 and 512 require

employers to provide employees with a 30-minute, uninterrupted meal break on all

shifts of 5 hours or more and a 10-minute rest period for all shifts of three and a

half hours or more.  Plaintiffs' counsel estimated SPBs missed one meal break

each week and three rest periods per week. Therefore, they estimated the premium

payments owed to California Class Members based on these violations to be

**$23,572,942.77**.  *Id.* ¶ 30.

In sum, the maximum total exposure for Eligible SPBs' wage and hour

claims, excluding PAGA claims, is approximately **$275,825,174.33**, with

$138,571,380.84 of that amount being compensatory damages.  *Id.*  The Total

Settlement Amount (minus the $1,940,000 PAGA Fund) represents 16.8% of the

total maximum exposure and 33.6% of the base compensatory damages.  *Id.* ¶¶ 30,

32.  This is a strong recovery given the risks of prevailing on liability and

recovering the maximum possible damages and penalties, placing the Settlement

well within the range of reasonableness.  *See, e.g.*, *Johnson*, 213 F.3d at 459

(finding a gross recovery of approximately one sixth (16.67%) of the potential

recovery adequate in light of litigation risks); *Singh v. Roadrunner Intermodal*

*Servs., LLC*, No. 15 Civ. 01497, 2018 WL 2412325, at *7 (E.D. Cal. May 29,

2018) (granting preliminary approval of wage and hour settlement representing approximately 12% of the estimated maximum damages), *modified by* 2018 WL 4382202, *2-3 (E.D. Cal. Sept. 13, 2018) (maintaining grant of preliminary approval "[d]espite the increase in class size and the resulting anticipated decrease in average recovery for class members").

The recovery is particularly robust given that more than half the Eligible SPBs were subject to arbitration agreements. The allocation formula, *see* Section IV.B, reflects the relative damages available for the different groups based on state-law claims, such as the Colorado liquidated damages provision. Scimone Decl. ¶ 33.

The average recovery here of $11,468.43 gross per Eligible SPBs compares favorably to other cases and supports approval. *See, e.g.*, *Gould v. Rosetta Stone, Ltd.*, 2013 U.S. Dist. LEXIS 138921, at *12 (N.D. Cal. Sept. 16, 2013) (in overtime misclassification case, $3,890.63 for the California claims and $2,964.29 for FLSA claims); *Kudatsky v. Tyler Techs.*, 2021 U.S. Dist. LEXIS 222313, at *7 (N.D. Cal. Nov. 17, 2021) (in overtime misclassification case, average of over $8,000 per person); *Wilson v. Tesla, Inc.*, 2019 U.S. Dist. LEXIS 112866, at *19 (N.D. Cal. July 8, 2019) (average payout of $2,440.29 in an overtime misclassification case, with payments ranging from $42.78 to $9,497.80). While a larger settlement is always theoretically possible, "the very essence of a settlement

is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting

*Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 624 (9th Cir. 1982)).  Given

the estimated total exposure and the risks that Plaintiffs would face in attempting to

win on all arguments, the $48,500,000 Total Settlement Amount is a robust

recovery.

### b.    The PAGA Settlement Amount Is Reasonable.

Finally, the PAGA allocation of $1,940,000 is reasonable and should be

approved, particularly in light of the Court's authority to reduce any award that is

"unjust, arbitrary and oppressing, or confusing."  Pyle Decl. ¶ 17; Labor Code §

2699 (e)(2); *see, e.g.*, *Fleming v. Covidien Inc.*, No. 10 Civ. 1487, 2011 U.S. Dist.

LEXIS 154590, at *4 (C.D. Cal. Aug. 12, 2011) (reducing PAGA penalty by more

than 80 percent to avoid injustice).  The proposed PAGA allocation of $1,940,000

represents 13% of the maximum PAGA exposure and 4% of the Total Settlement

Amount.  Pyle Decl. ¶ 19.[12]  Wells Fargo's maximum penalties are $14,962,350.00

---

[12]    Courts looking at the proportion of the PAGA settlement to the overall
settlement recovery have approved similar proportionate recoveries.  *See, e.g.*, *Van
Kempen v. Matheson Tri-Gas, Inc.*, No, 15 Civ. 66079660, 2017 U.S. Dist. LEXIS
137182, at *6, *29-30 (N.D. Cal. Aug. 25, 2017) (1.4%).  In cases like this one,
featuring a large Total Settlement Amount vindicating the rights of class members
and providing deterrence, it is prudent to permit a higher compromise of the PAGA
penalties to allow class members to receive the maximum amount of
reimbursement for unpaid wages. *See, e.g., O'Connor v. Uber Technologies, Inc.*,
201 F.Supp.3d 1110, 1134 (N.D. Cal. 2016) ("By providing fair compensation to
the class members as employees and substantial monetary relief, a settlement not

30

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

assuming that the penalties for the PAGA violations could be stacked and are calculated as initial violations.[13] *Id.* ¶ 18.

This recovery is reasonable because courts have discretion to reduce PAGA penalties, Cal. Lab. Code § 2699(e)(2), and is well within the range that courts routinely approve. *See, e.g.*, *Billups-Larkin v. Aramark Servs., Inc.*, No. 21 Civ. 6852 , 2023 U.S. Dist. LEXIS 122756, *9 (N.D. Cal. July 17, 2023) (finding PAGA payment that was approximately 1.9% of the total potential value of the PAGA claim reasonable); *McLeod v. Bank of Am., N.A.*, No. 16 Civ. 3294 , 2018 U.S. Dist. LEXIS 195314, at *4 (N.D. Cal. Nov. 14, 2018) (finding approximately 1.1% of estimated PAGA exposure to be adequate).

Given these considerations, the $48,500,000 Total Settlement Amount, including the $1,940,000 PAGA amount, is fair, reasonable, and adequate, and the Settlement is in the best interest of the Class and Collective.

### 4.    The Parties Engaged in Sufficient Discovery to Make an Informed Decision About Settlement.

A settlement requires adequate discovery.  The touchstone of this analysis is whether "the parties have sufficient information to make an informed decision

---

only vindicates the rights of the class members as employees, but may have a deterrent effect upon the defendant employer and other employers, an objective of PAGA.").

[13]    Because Plaintiff Aiwas filed her PAGA action on February 28, 2023, the PAGA claims in this case are subject to the PAGA penalty structure predating the 2024 amendments to the statute.  *See* Cal. Lab. Code § 2699(v)(1).

about settlement," including formal and informal discovery.  *Dunleavy v. Nadler
(In re Mego Fin. Corp. Sec. Litig.)*, 213 F.3d 454, 459 (9th Cir. 2000) (citation
omitted).  Plaintiffs engaged settlement discussions only after formal and informal
pre-mediation discovery that included interrogatories and requests for production.
Scimone Decl. ¶¶ 40-43.  Wells Fargo produced nearly 6,500 pages of documents,
including relevant internal policies governing SPBs' work, job descriptions, job
postings, performance evaluation metrics, training materials, software guides,
compensation plans, commission structures, and robust payroll data.  *Id.* ¶ 41.
Wells Fargo also produced each of the named plaintiffs' personnel files.  Plaintiffs
also made a substantial document production consisting of emails, text messages,
and other relevant documents.  *Id.* ¶ 43.  The information contained in these
documents allowed Plaintiffs to conduct a thorough analysis of the strengths and
weaknesses of their claims and "make an informed decision about settlement."  *See
Dunleavy*, 213 F.3d at 459.

### 5.    Counsel's Experience and Views Support Approval.

"Great weight is accorded to the recommendation of counsel, who are most
closely acquainted with the facts of the underlying litigation."  *DirecTV, Inc.*, 221
F.R.D. at 528.  "[P]arties represented by competent counsel are better positioned
than courts to produce a settlement that fairly reflects each party's expected
outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (quoting *In re Pac. Enters. Sec.
Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  Plaintiffs' Counsel are among the most

experienced class action litigators in the country. Scimone Decl. ¶¶ 3-11; Pyle Decl. ¶¶ 5-9. They specialize in prosecuting complex employment class actions, and over many years have successfully – and unsuccessfully – litigated many such cases, putting them in a strong position to evaluate Plaintiffs' claims and Wells Fargo's defenses. Scimone Decl. ¶¶ 4-6. Based on their extensive experience, Plaintiffs' Counsel believe that the Settlement is fair, reasonable, and adequate.

### 6. The Court Should Approve the Proposed Settlement Administrator.

The Parties have agreed on Rust, a well-regarded Settlement Administrator, to be the Settlement Administrator after soliciting bids from four experienced and reputable administrators. Scimone Decl. ¶ 44. Rust's anticipated costs of approximately $41,000.00 are modest both in absolute terms and relative to the value of the Settlement. *Id.* ¶ 47. The cost of administration will be deducted from the Total Settlement Amount.

### C. The Court Should Approve the Proposed Notices and Administration Plan.

The proposed Notices are the "best notice . . . practicable under the circumstances. Fed. R. Civ. P. 23(c)(2)(B); Scimone Decl., Ex. 1, Exs. A-J (Notices). The notice must include the following in "easily understood language":

(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding

1    effect of a class judgment on members under Rule 23(c)(3).

2    Fed. R. Civ. P. 23(c)(2)(B).  Notice is satisfactory if it "generally describes the

3    settlement in sufficient detail to alert those with adverse viewpoints to investigate

4    and to come forward and be heard."  *Churchill Vill., LLC v. GE*, 361 F.3d 566, 575

5    (9th Cir. 2004) (citations omitted).  The Parties' proposed Notices include all

6    required information.  Scimone Decl., Ex. 1, Exs. A-J (Notices).

7          The proposed Notices provide information regarding the claims and the

8    Settlement, the rights and options for Class Members, and how they can obtain

9    additional information.  *Id*.  The Notice explains that Class Members may object or

10   opt out and that Class Members who do not timely opt out will be bound by the

11   Settlement and will release the Released California or Colorado Claims, and that if

12   they cash their Settlement Check or elect Electronic Payment, they will also release

13   the Released Collective Claims.  The proposed Notices state that Class Members

14   who affirmatively opt out will not receive a Settlement Check (except their share

15   of the PAGA portion of the Settlement, if any), but also will not be subject to any

16   release of claims.  *Id*.  The proposed Notices provide instructions for accessing

17   case documents on the docket and case website, and contain contact information

18   for Plaintiffs' Counsel, facilitating Eligible SPBs' abilities to ask questions and

19   learn information.  *Id*.  The Notices explain how Eligible SPBs may receive their

20   payment electronically and include a link to the website where they may select

21

34

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement;
Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM

their preferred payment options. *Id.* The Notices will also list the final approval

hearing date, and that it may be subject to change without further notice. *Id.*

The Settlement Administrator send the proposed Notice via email and First-

Class U.S. Mail to the last-known home addresses and personal email addresses of

Eligible SPBs. Scimone Decl., Ex. 1 ¶ 3.2 (Settlement). Returned Notices will be

skip traced twice to get an updated address and then re-mailed or re-sent by other

relevant means. *Id.* The proposed notice plan complies with Rule 23 and due

process.

## VI.    A FINAL APPROVAL HEARING SHOULD BE SCHEDULED.

Plaintiffs, after consultation with Defendants, propose that the Court set a

final approval hearing and adopt a settlement administration schedule as set forth

in the Proposed Order filed concurrently with this motion.

Respectfully submitted,

Dated: September 4, 2025          By: */s/ Michael J. Scimone*

Michael J. Scimone*
**OUTTEN & GOLDEN**
685 Third Avenue, 25th Floor
Colorado, NY 10017
Telephone: (212) 245-1000
Facsimile: (646) 509-2060
Email: mscimone@outtengolden.com
*Admitted Pro Hac Vice*

Jahan C Sagafi (SBN 224887)
Adam L. Koshkin (SBN 320152)
Kaelyn Mahar (SBN 338257)
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile: (415) 638-8810
Email: jsagafi@outtengolden.com
Email: akoshkin@outtengolden.com
Email: KMahar@outtengolden.com

Jennifer Kramer (SBN 203385)
**KRAMER BROWN AND HUI LLP**
3600 Wilshire Blvd., Suite 1908
Los Angeles, CA 90010
Telephone: (213) 310-8301
Facsimile: (213) 310-8302
Email: jennifer@kbhllp.com

*Attorneys for Plaintiffs and the
Proposed Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent electronically to all registered parties by operation of the Court's electronic filing system.

/s/ *Michael J. Scimone*

Michael J. Scimone
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
Colorado, NY 10017
Tel.: (212) 245-1000
Fax: (646) 509-2060
Email: mscimone@outtengolden.com
*Admitted Pro Hac Vice

Plaintiffs' Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; Memorandum of Points & Authorities in Support Case No. 2:24-cv-4077 SRM