# Exhibit 1

## SETTLEMENT AGREEMENT AND RELEASE

Plaintiffs Sabrina Perez, Aric Vickrey, Tanner Tom, Andrej Simunac, and Lilyana Aiwas ("Plaintiffs") and Defendants Wells Fargo Bank, N.A. and Wells Fargo & Company ("Wells Fargo" or "Defendants") (collectively with Plaintiffs, the "Parties") hereby enter into this Settlement Agreement and Release ("Agreement") to resolve the wage and hour claims of Plaintiffs, Class Members, Collective Members, and PAGA Members (as defined below).

## RECITALS

**WHEREAS**, on November 30, 2023, Plaintiff Perez filed her complaint against Wells Fargo Bank, N.A. alleging that Wells Fargo improperly classified its SPBs (as defined herein) as overtime exempt, thereby denying them proper overtime pay in violation of the Fair Labor Standards Act ("FLSA") and New Mexico state laws;

**WHEREAS**, on February 2, 2024, Plaintiffs filed a First Amended Complaint adding Wells Fargo & Company as a defendant, asserting class claims under Colorado state law, and removing New Mexico state law class claims. Through a Second Amended Complaint, Plaintiffs added class claims under California state law;

**WHEREAS**, on February 28, 2024, Plaintiff Aiwas electronically filed a PAGA Notice with the Labor and Workforce Development Agency ("LWDA"), alleging she was misclassified as exempt and suffered resulting wage-and-hour violations for overtime, missed meal- and rest-breaks, and failures to provide adequate wage statements, waiting time penalties, and pay all wages due on regularly scheduled paydays;

**WHEREAS**, on May 15, 2024, Plaintiff Aiwas filed a civil PAGA action for these violations in Alameda County Superior Court, Case No. 24CV075649, alleging claims on behalf of all current and former SPBs who performed work for Wells Fargo in the State of California during the period from February 28, 2023, to the present;

**WHEREAS**, following significant litigation, including the exchange of data and documents, meet and confer efforts over discovery disputes, and briefing on several contentious motions, the Parties participated in a full-day mediation session on December 17, 2024, with the assistance of experienced wage and hour class and collective action mediator Jeffrey A. Ross, but were not able to reach a settlement that day;

**WHEREAS**, the Parties continued to litigate the case, including briefing two additional motions, and continued to discuss the possibility of settlement through mediator Jeffrey A. Ross. With the assistance of Mr. Ross, the parties ultimately reached a settlement in principle on January 31, 2025;

**WHEREAS**, the purpose of this Agreement is to settle fully and finally the claims raised by Plaintiffs on behalf of themselves and other SPBs arising out of the allegation that they were misclassified as exempt, including, but not limited to, those arising out of or related to all claims for unpaid overtime wages, unpaid minimum wages, claims related to the failure to provide meal and rest breaks, claims related to untimely payment of wages during employment or upon

termination, claims related to the alleged failure to provide compliant wage statements and/or maintain required records, and all related claims.

**WHEREAS**, Wells Fargo and Released Parties (as defined herein) deny all liability to Plaintiffs and any other SPB;

**WHEREAS**, Plaintiffs' Counsel analyzed and evaluated the merits of Plaintiffs and other SPBs' claims including through interviews of Plaintiffs; obtained and reviewed documents from Plaintiffs and from Wells Fargo including Plaintiffs' personnel files and Wells Fargo's internal policy documents; analyzed payroll data; and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the claims, if not settled now, might not result in any recovery or might result in a recovery less favorable, and that in the event of a recovery, it would not occur for several years, Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs and SPBs;

**NOW, THEREFORE**, in consideration of the mutual covenants and promises that are set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the claims on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1.**    **Agreement** or **Settlement** means this Settlement Agreement and Release and the exhibits hereto, which the Parties agree and understand set forth all material terms and conditions of the Settlement between them, and which is subject to Court approval.

**1.2.**    *Aiwas* means *Aiwas v. Wells Fargo Bank, N.A.*, No. 24CV075469 (Alameda Cnty. Super. Ct.).

**1.3.**    **Attorneys' Fees and Costs** means such funds as may be ordered by the Court to Plaintiffs' Counsel to compensate them for their attorneys' fees and reimbursement for out-of-pocket costs.

**1.4.**    **Bar Date** means the date that is 60 days from the date of the initial mailing of Notice to Class Members, except for Class Members to whom Notice is re-mailed, for whom the Bar Date shall be the later of 60 days from the initial mailing or 30 days from the date of re-mailing, whichever is later, provided that no re-mailings will be completed after the 30th day following the initial mailing. Nothing herein shall preclude Plaintiffs' Counsel or the Settlement Administrator from sending information about the Settlement to Class Members after the 30th day following the initial mailing; to the extent that this occurs, the Bar Date for any such individuals shall be the 60th day after the initial notice was mailed. The Bar Date is the deadline for Class Members' Objections or Opt-out Statements, if any.

1.5.     **California Class Members** means individuals who have been employed by Wells Fargo as an SPB in California during the California Class Period.

1.6.     **California Class Period** means March 27, 2020 through the Release Date.

1.7.     **Cashing Period** shall mean the 180-day period beginning the day the Settlement Administrator sends the Settlement Checks to Participating Class Members and Putative Collective Members and PAGA Settlement Checks to PAGA Members who did not timely elect to receive their Settlement Amount via Electronic Payment.

1.8.     **Class Members** means "California Class Members" and "Colorado Class Members."

1.9.     **Class Period** means the "California Class Period" and/or the "Colorado Class Period".

1.10.    **Class List** means a list of all Class Members, Putative Collective Members, and PAGA Members, including their names, last known addresses, last known personal email addresses and personal telephone numbers if available, social security numbers, Eligible FLSA Workweeks, Eligible California Workweeks, Eligible Colorado Workweeks, and Eligible PAGA Pay Periods.  As to California Class Members, the Class List will also indicate the individual's termination date if applicable.  To protect the privacy rights of Class Members, Putative Collective Members, and PAGA Members, the Administrator must maintain this Class List information in confidence, use it only for purposes of this Settlement and for no other purpose, and restrict access to the information to employees of the Administrator who need access to it to effect and perform under this Agreement.  The Class List will be provided to Plaintiffs' counsel who agree to maintain this Class List information in confidence, use it only for purposes of this Settlement and for no other purpose, and treat the Class List and the information contained therein as Attorneys' Eyes Only, not to be shared with Plaintiffs or any third party.

1.11.    **Collective Period** means February 22, 2021 through the Release Date.

1.12.    **Colorado Class Members** means individuals who have been employed by Wells Fargo as an SPB in Colorado during the Colorado Class Period.

1.13.    **Colorado Class Period** means February 2, 2021 through the Release Date.

1.14.    **Court** means the United States District Court for the Central District of California.

1.15.    **Days** means calendar days.

1.16.    **Defendants** or **Wells Fargo** means Wells Fargo Bank. N.A. and Wells Fargo & Company.

1.17.    **Defendants' Counsel** means Kading Briggs LLP.

**1.18.** **Effective Date** means the date on which the Final Approval Order becomes a non-appealable order.

**1.19.** **Eligible California Workweek** means each calendar week worked by a California Class Member as an SPB in California during the California Class Period.

**1.20.** **Eligible Colorado Workweek** means each calendar week worked by a Colorado Class Member as an SPB in Colorado during the Colorado Class Period.

**1.21.** **Eligible FLSA Workweek** means each calendar week worked by a Putative Collective Member as an SPB in a state other than California or Colorado during the Collective Period.

**1.22.** **Eligible Workweek** means Eligible California Workweek, Eligible Colorado Workweek, and/or Eligible FLSA Workweek, as applicable.

**1.23.** **Eligible PAGA Pay Period** means each pay period worked by a PAGA Member as an SPB in California during the PAGA Period.

**1.24.** **Electronic Payment** means the payment issued to each Participating Class Member and PAGA Member who elects to receive payment of their Settlement Amount through electronic means and electronically agrees to release of claims language set forth in Section 10.1.a through the settlement administration website maintained by the Settlement Administrator. Such election shall be made prior to the entry of the Final Approval Order.

**1.25.** **Employer Payroll Taxes** means all taxes and withholdings an employer is required to make pursuant to federal, state, and/or local law arising out of or based upon the payment of employment compensation in this Action, including but not limited to FICA, FUTA, and SUTA obligations. This amount shall be paid separately from the Total Settlement Amount.

**1.26.** **Fairness Hearing** means the hearing before the Court relating to the Motion for Final Approval.

**1.27.** **Final Approval Order** means the Order entered by the Court after the Fairness Hearing, certifying the Class and Collective for settlement purposes, approving the terms and conditions of this Agreement, and authorizing distribution of the Electronic Payments and Settlement Checks, PAGA Settlement Checks, Service Awards, LWDA Payment, settlement administration costs, and Attorneys' Fees and Costs, consistent with this Agreement.

**1.28.** **Funding Date** means twenty (20) Days after the Effective Date.

1.29. **Litigation** means the case *Perez et. al. v. Wells Fargo Bank, N.A., et. al.*, No. 24-cv-04077-SRM-AS (C.D. Cal.)

1.30. **LWDA Payment** means seventy-five percent (75%) of the PAGA Fund, or $1,455,000, which shall be paid to the California Labor and Workforce Development Agency.

1.31. **Motion for Final Approval** means documents and materials to be filed with the Court pursuant to Section 7.1, seeking final approval of the Settlement, Attorneys' Fees and Costs, and Service Awards.

1.32. **Net Fund** means the remainder of the Total Settlement Amount after deductions/payments for: (1) Court-approved Attorneys' Fees and Costs; (2) Court-approved Service Awards; (3) the PAGA Fund; and (4) settlement administration costs.

1.33. **Notice** means the Court-approved Notice of Proposed Class Action Settlement (for Class Members) and Notice of Proposed Collective Action Settlement (for Putative Collective Members), as authorized in the Preliminary Approval Order, in a form substantially similar to **Exhibits A-D.**

1.34. **Objection** means the written statement that an individual Class Member submits to object to the Settlement.

1.35. **Objector** means a Class Member who properly files an Objection to the Settlement and does not include any Class Member who opts out of this Settlement.

1.36. **Opt-Out Statement** is a written, signed statement that an individual Class Member submits to opt out and be excluded from this Settlement.

1.37. **PAGA Check Enclosure Letter** means the letter, incorporated as part of Exhibit A, which the Settlement Administrator shall mail to PAGA Members together with the PAGA Settlement Check.

1.38. **PAGA Fund** means $1,940,000.00 of the Total Settlement Amount that is attributed to settle fully and finally the PAGA claims of PAGA Members.

1.39. **PAGA Members** means individuals who have been employed by Wells Fargo as an SPB in California during the PAGA Period.

1.40. **PAGA Members' Payment** means twenty-five percent (25%) of the PAGA Fund, or $485,000, which shall be paid to PAGA Members.

1.41. **PAGA Period** means February 28, 2023 through the Release Date.

1.42. **PAGA Settlement Amount** means each PAGA Member's share of the PAGA Members' Payment calculated in accordance with this Agreement.

1.43. **PAGA Settlement Check** means the checks issued to each PAGA Member for their PAGA Settlement Amount. The Administrator may send Participating Class Members a single check combining their Settlement Check and their PAGA Settlement Check if applicable.

1.44. **Participating Class Members** means all Class Members who do not timely submit Opt-Out Statements before the Bar Date.

1.45. **Participating Collective Members** means each Putative Collective Member who opts into the settlement by endorsing and cashing a Settlement Check within the Cashing Period.

1.46. **Parties** means Plaintiffs and Defendants.

1.47. **Plaintiffs** means Sabrina Perez, Aric Vickrey, Tanner Tom, Andrej Simunac, and Lilyana Aiwas.

1.48. **Plaintiffs' Counsel** means Outten & Golden, LLP, Kramer Brown Hui LLP, and Hunter Pyle Law, PC.

1.49. **Preliminary Approval Order** means the Order entered by the Court: (1) preliminarily certifying the Class solely for the purpose of effectuating the Agreement; (2) preliminarily approving the terms and conditions of this Agreement; (3) appointing Plaintiffs' Counsel as Class Counsel; (4) directing the manner and timing of providing Notice to Class Members, Putative Collective Members, and PAGA Members; and (5) setting dates to effectuate the terms of this Agreement, including the date of the Fairness Hearing.

1.50. **Preliminary Approval Date** means the date on which the Court enters the Preliminary Approval Order.

1.51. **Preliminary Approval Motion** means documents and materials to be filed with the Court seeking preliminary approval of this Agreement and the issuance of the Preliminary Approval Order.

1.52. **Putative Collective Members** means individuals who have been employed by Wells Fargo as an SPB nationwide except in California or Colorado during the Collective Period.

1.53. **Qualified Settlement Fund or QSF** means the account established by the Settlement Administrator for the Total Settlement Amount paid by Defendants. The Parties agree that the QSF (1) shall be established pursuant to an order of the Court prior to the receipt of any funds from Wells Fargo; (2) shall be established to resolve and satisfy the contested claims that have resulted, or may result, from the matters that are the subject of these lawsuits and

that are released by this Agreement; and (3) shall segregate the assets in the fund or account that is established (within a separately established fund or account) from the assets of Wells Fargo and all related other persons. The Administrator shall be responsible for administering and otherwise operating the QSF, including preparing, reporting, and filing all appropriate and required federal, state, and local tax forms, such as W-2 forms and 1099 forms.

1.54. **Release Date** means the date on which the Court grants Preliminary Approval of the Settlement Agreement.

1.55. **Released California Claims** means any and all California and federal wage and hour claims pled in the operative Complaint, or that could have been pled based on the facts alleged in the operative Complaint, and that accrued during Class Members' or Putative Collective Members' employment as exempt-classified SPBs, relating back to March 27, 2020, and continuing through the Release Date, whether known or unknown, including, but not limited to, those arising out of or related to all claims for unpaid overtime wages, unpaid minimum wages, claims related to the failure to provide meal and rest breaks, claims related to untimely payment of wages during employment or upon termination, claims related to the alleged failure to provide compliant wage statements and/or maintain required records, and all related claims for penalties, interest, liquidated damages, restitution, injunctive relief, attorneys' fees, costs, expenses, or any other damages.

1.56. **Released Class Claims** means Released California Claims and Released Colorado Claims.

1.57. **Released Collective Claims** means any and all wage and hour claims pled in the operative Complaint, or that could have been pled based on the facts alleged in the operative Complaint, and that accrued during Class Members' or Putative Collective Members' employment as exempt-classified SPBs, relating back to February 22, 2021, and continuing through the Release Date, whether known or unknown, including, but not limited to, those arising out of or related to all state and federal claims for unpaid overtime wages and all related claims for penalties, interest, liquidated damages, restitution, injunctive relief, attorneys' fees, costs, expenses, or any other damages.

1.58. **Released Colorado Claims** means any and all Colorado and federal wage and hour claims pled in the operative Complaint, or that could have been pled based on the facts alleged in the operative Complaint, and that accrued during Class Members' or Putative Collective Members' employment as exempt-classified SPBs, relating back to February 2, 2021, and continuing through the Release Date, whether known or unknown, including, but not limited to, those arising out of or related to all claims for unpaid overtime wages, claims related to wage statements and wage notices, and all related claims for penalties, interest, liquidated damages, restitution, injunctive relief, attorneys' fees, costs, expenses, or any other damages.

1.59. **Released PAGA Claims** means any and all claims relating to penalties under California's Private Attorney General Act ("PAGA") that were alleged, or that reasonably could have been alleged, based on the facts contained in the *Aiwas* Operative Complaint and in Aiwas's LWDA notice letter dated February 28, 2024, and that accrued during PAGA Members' employment as exempt‑classified SPBs at any time from February 28, 2023 through the Release Date.

1.60. **Released Parties** means Defendants and Wells Fargo Clearing Services LLC d/b/a Wells Fargo Advisors, their respective predecessors, their subsidiaries and parent companies, and each of their respective past and present officers, directors, owners, members, managers, shareholders, investors, agents, insurers, attorneys, employees, fiduciaries, successors, assigns, and representatives, in their individual and/or representative capacities.

1.61. **Reminder** means the Court‑approved reminder to be sent by the Settlement Administrator to Participating Class Members, Putative Collective Members, and PAGA Members who have not received an Electronic Payment reminding them to cash their Settlement Checks and PAGA Settlement Checks, in a form substantially similar to **Exhibits G-I**.

1.62. **Service Awards** means the Court‑approved awards to be paid to Plaintiffs of up to $25,000 each in recognition for their service as class representatives and awards to be paid to Yitao Huang and Dawn Gatti of up to $15,000 each in recognition of their substantial participation in the Litigation, including responding to discovery and providing declarations to support the Plaintiffs' motion to send court‑authorized notice pursuant to 28 U.S.C. § 216(b) and to support Plaintiffs' position in mediation.

1.63. **Settlement Administrator** means Rust Consulting, Inc.

1.64. **Settlement Amount** means each Participating Class and Putative Collective Member's share of the Net Fund calculated in accordance with this Agreement.

1.65. **Settlement Check** means the check issued to each Participating Class Member and Putative Collective Member for their Settlement Amount (other than those Participating Class Members who elect Electronic Payment prior to entry of the Final Approval Order).

1.66. **SPB** means individuals employed by Wells Fargo in the exempt‑classified job titles of Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker.

1.67. **Total Settlement Amount** means $48,500,000.00, which is the total amount that Defendants have agreed to pay to fully resolve these claims in exchange for the releases provided herein. This amount will be used to pay Settlement Amounts; Court‑approved Attorneys' Fees and Costs; Court‑approved Service Awards; the PAGA Fund; and settlement administration costs. The Total Settlement Amount does not include Employer Payroll Taxes, which Defendants shall pay separately.

2.    **PRELIMINARY SETTLEMENT APPROVAL**

2.1.    **Disposition of *Aiwas*.** Within 14 days of the date this Agreement is fully executed, Plaintiff Lilyana Aiwas will request dismissal of *Aiwas* without prejudice.

2.2.    **Amended Complaint.** Concurrent with or before the Motion for Preliminary Approval is filed, as described in Section 2.3, the Parties shall file a stipulation permitting Plaintiffs to file an Amended Complaint in the Litigation. The Amended Complaint shall add Plaintiff Aiwas as a Named Plaintiff and the PAGA claims asserted in *Aiwas* but shall not otherwise amend the parties or claims pled in the Litigation. If this Agreement does not become final for any reason, the Parties' willingness to stipulate to the filing of the Amended Complaint shall have no bearing on, and will not be admissible in connection with, these issues in the Litigation or any other proceeding. If this Agreement does not become final, neither the Parties nor their counsel will offer or make reference to the stipulation for purposes of settlement in this any other proceeding.

2.3.    **Motion for Preliminary Approval.** Plaintiffs' Counsel shall submit the Preliminary Approval Motion to the Court on September 4, 2025. The Motion shall include: (1) the proposed Notices attached hereto as **Exhibit A-D**; (2) a proposed Preliminary Approval Order; and (3) the necessary documents, memorandum, affidavits, and exhibits for purposes of certifying the Classes under Fed. R. Civ. P. 23 for settlement purposes only and preliminarily approving the Agreement. The Motion will seek a date for a Fairness Hearing before the Court at the earliest practicable date on which all counsel for the Parties are available. Plaintiffs' Counsel shall submit the Preliminary Approval Motion and the proposed Preliminary Approval Order to Defendants' Counsel for their review no less than five (5) days prior to the filing of such papers with the Court and will consult with Defendants' counsel regarding the hearing date for Preliminary Approval to ensure all counsel are available.

3.    **SETTLEMENT ADMINISTRATION AND NOTICE TO CLASS AND PUTATIVE COLLECTIVE MEMBERS**

3.1.    The Settlement Administrator will be Rust Consulting, Inc.

3.2.    **Duties of the Settlement Administrator.** The Settlement Administrator will be responsible for: (1) establishing a QSF account; (2) preparing, printing, and disseminating the Notice via First Class U.S. Mail and personal email where available, and where mail and email Notice is ineffective because mail and email Notice are returned as undeliverable, by text message where available, to Class Members and Putative Collective Members; (3) making commercially reasonable searches for new addresses with no forwarding address, including by tracing any Notices returned undeliverable by mail or email up to two times to obtain a new mailing address or personal email address, and resending the Notices, and sending Notice via mail or personal email to any Class or Putative Collective Member who contacts the Settlement Administrator or Plaintiffs' Counsel and requests a Notice between the initial mailing of the Notice and the Bar Date;

(4) maintaining an email address and toll-free phone number which Class and Collective Members can use to make inquiries and provide address updates; (5) preparing, monitoring, and maintaining a website where Class and Collective Members can elect Electronic Payment, review the Settlement Agreement, Notice, contact information for the Settlement Administrator and Plaintiffs' Counsel, and provide address updates; (6) promptly furnishing to Plaintiffs' Counsel and Defendants' Counsel copies of any Class Members' Objections and Opt-Out Statements that the Settlement Administrator receives with contact information redacted; (7) receiving and tracking Class Members' Opt-Out Statements, Objections, and other correspondence; (8) determining the number of Eligible Workweeks and Eligible PAGA Periods attributable to each Class Member, Collective Member, and PAGA Member; (9) determining the Settlement Amount allocated to each Class and Putative Collective Member, and the PAGA Settlement Amount allocated to each PAGA Member, in accordance with this Agreement, along with the amount of all payroll taxes to be paid and deductions to be withheld, including Wells Fargo's funding obligations for Employer Payroll Taxes; (10) issuing Electronic Payments to those Class Members and PAGA Members who elect Electronic Payment and preparing and mailing Settlement Checks to Participating Class Members and Putative Collective Members, and to PAGA Members, PAGA Settlement Checks and the PAGA Check Enclosure Letter who do not timely elect Electronic Payment; (11) preparing and sending Reminders via mail and personal email where available, to Putative Collective Members, Participating Class Members, and PAGA Members who have not yet cashed their Settlement Checks and PAGA Settlement Checks or received Electronic Payments, reminding them to cash their checks; (12) providing a report of uncashed checks to the Parties' counsel half-way through the Check Cashing Period; (13) making commercially reasonable searches for new addresses, including by tracing any Settlement Checks, and PAGA Settlement Checks returned undeliverable with no forwarding address up to two times to obtain a new mailing address and resending the checks; (14) where mailed and email Notices are returned as undeliverable, sending Notice by text message to Class Member and Putative Collective Members' personal phone numbers where available; (15) distributing any Court-approved Service Awards and Attorneys' Fees and Costs; (16) calculating and paying all appropriate taxes and complying with all applicable tax reporting obligations, including preparing and filing all applicable tax forms; (17) determining the tax characterization of the Service Awards; (18) working with Class Counsel and Defendants' Counsel to resolve disputes raised by Class Members and Putative Collective Members about Wells Fargo's records and/or the calculation of his or her Settlement Amount pursuant to Section 9.8 below; (19) referring to Plaintiffs' Counsel all inquiries by Class and Collective Members regarding matters not within the Settlement Administrator's duties specified herein; (20) retaining and providing a copy of Settlement Checks endorsed by Participating Class Members and Participating Collective Members to Parties' counsel and, as applicable, retaining and providing a copy of each Participating Class Members' and PAGA Members' election to receive Electronic Payment; (21) timely responding to communications from the Parties' counsel; (22) maintaining adequate records of its activities, including the dates of the mailing(s) of Notice, returned mail and other communications and attempted written or electronic communications with Class and Collective Members; (23) protecting the personal data of Class and Collective Members, including Social Security numbers, from disclosure; (24) indemnifying the Parties for any penalty or interest arising out of an

incorrect calculation or late deposit of the same; (25) preparing a final accounting of settlement funds remaining in the QSF after the expiration of the Check Cashing Period, and distributing the remaining funds in accordance with this Agreement; (26) preparing and providing a compliance affidavit in connection with the Application for Final Approval; and (27) such other tasks as are set forth herein, or as the Parties mutually agree, or as are otherwise determined by the Settlement Administrator as necessary in effectuating its notice duties.

3.3.    **Settlement Administrator Indemnity.**  In addition to any indemnification obligation identified elsewhere herein or in any separate contractual arrangement with Wells Fargo, the Settlement Administrator shall indemnify the Parties and counsel regarding any improper handling of its responsibilities, including (but not limited to) the handling of any tax-related matters and/or any disclosure of personal data of former and current employees of Wells Fargo.

3.4.    **Access to the Settlement Administrator.**  The Parties will have equal access to the Settlement Administrator and all information related to the administration of the Settlement throughout the settlement administration period, except to the extent that the Settlement Administrator receives any confidential inquiries from Class Members or Putative Collective Members that should be directed solely to Plaintiffs' counsel.  In addition, while Plaintiffs' counsel will have access to the Class List, Plaintiffs' counsel agree to maintain this Class List information in confidence, use it only for purposes of this Settlement and for no other purpose, and treat the Class List and the information contained therein as Attorneys' Eyes Only, not to be shared with Plaintiffs or any third party.  The Settlement Administrator will provide regular reports to counsel for the Parties about the status of the mailing of the Notice, Settlement Checks, PAGA Settlement Checks, and Reminders and the payment of the Electronic Payments.

3.5.    **Cooperation.**  Defendants agree to cooperate with the Settlement Administrator and to provide accurate information to the extent reasonably available and necessary to calculate the Settlement Amounts to be distributed pursuant to this Agreement and locate Class and Collective Members.

4.    **NOTICE**

4.1.    **Class List.** Within twenty-one (21) days of the Preliminary Approval Order, Defendants' Counsel shall provide the Settlement Administrator and Plaintiffs' Counsel with the Class List.  The Settlement Administrator shall also provide the Parties with its calculations of the number of workweeks included in the Class List.

4.2.    **Notice Content.**  The Notice will include a description of the claims and this Agreement; the Class or Collective Member's Eligible California, Colorado, and/or FLSA Workweeks; the PAGA Member's Eligible PAGA Pay Periods, if applicable; the estimated amount of each Class and Putative Collective Member's Settlement Check and each PAGA Member's PAGA Settlement Check, if applicable; information about the opportunity (and consequences) of objecting or opting out (for Class Members) or participating by either

electing Electronic Payment or endorsing and cashing a Settlement Check; and information about the Fairness Hearing.  The Notice will advise Class and Collective Members of a website where they can review information about the settlement and elect Electronic Payment if applicable.

**4.3.**  **Notice Distribution.**  Within 35 Days of the Preliminary Approval Date, the Settlement Administrator shall send to all Class Members the Court-approved Notice via mail and personal e-mail where available, with a link and/or QR code to the website.  Notices to Putative Collective Members who are not Class Members will be sent contemporaneously with settlement payments, as provided in Section 9.9 below.

**4.4.**  **Skip Trace and Remailing.**  The Settlement Administrator shall use all commercially reasonable means to confirm Class and Putative Collective Members' addresses and obtain new addresses, as necessary.  In the event that a Notice is returned as undeliverable, the Settlement Administrator shall attempt to obtain a correct address, including by tracing any Notices returned undeliverable by mail or personal email, up to two times to obtain a new mailing address or personal email address and resending the Notices by mail and/or other relevant means, provided that no remailing takes place after the 30th day after the initial mailing is sent out. If a mailed and e-mailed Notice is returned as undeliverable, the Settlement Administrator shall send the Notice via text message to the Class and/or Collective Members's personal phone number if available. The Settlement Administrator shall also mail or email a Notice to any Class or Putative Collective Member who contacts the Settlement Administrator or Plaintiffs' Counsel during the period between the initial mailing of the Notice and the Bar Date and requests a Notice.  It will be presumed that if a notice has not been returned within thirty (30) days of the mailing that the Class Member or Putative Collective Member received the Notice.  In advance of the Fairness Hearing, the Settlement Administrator shall submit a compliance affidavit reflecting completion of these efforts.

**5.**  **CLASS MEMBER OPT-OUTS.**

**5.1.**  Class Members shall have until the Bar Date to opt out.

**5.2.**  **Opt-Out Statement.**  Class Members who choose to opt out of the Settlement must mail a written, signed Opt-Out Statement to the Settlement Administrator that states that they are opting out of the settlement, and includes their name, address, telephone number, and a statement indicating their intention to opt out, such as: "I opt out of the Wells Fargo wage and hour settlement." To be effective, the Opt-Out Statement must be postmarked or otherwise received by the Bar Date. However, Class Members will not be permitted to opt out of the PAGA Settlement.

**5.3.**  The Settlement Administrator will stamp the received date on the original of each Opt-Out Statement that it receives and shall serve copies of each Opt-Out Statement on Plaintiffs' Counsel and Defendants' Counsel no later than three Days after receipt with contact information redacted.  The Settlement Administrator shall provide all Opt-out Statements as exhibits to its compliance affidavit to be filed with the Motion for Final Approval with

contact information redacted.   The Settlement Administrator will retain the stamped originals of all Opt-Out Statements and the originals of all envelopes accompanying Opt-Out Statements in its files until the Effective Date.

5.4.    There shall be a presumption that any Opt-Out Statement not received by the Settlement Administrator by the Bar Date is invalid; the burden to disprove this presumption shall be on any Class Member who claims that they submitted a timely Opt-Out Statement that was not received by the Settlement Administrator.

5.5.    Any Class Member who does not submit a valid and timely Opt-Out Statement by the Bar Date shall be bound by the terms of this Agreement and the releases herein, even if he or she files an objection to the Settlement.

## 6.    OBJECTIONS TO SETTLEMENT

6.1.    Participating Class Members shall have until the Bar Date to object.

6.2.    Participating Class Members who wish to object to the Settlement at the Fairness Hearing must first do so in writing. To be considered, such Objection must be sent to the Settlement Administrator and postmarked or otherwise received by the Bar Date. All objections will be sent by the Administrator to the Parties within two business days.  Any written objections shall state each specific objection and any legal and factual support for each objection. Class Members who opt out may not object.

6.3.    An Objector has the right to appear at the Fairness Hearing either on their own behalf or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state their intention to do so in writing on their Objection at the time they submit their Objection.  An Objector may withdraw their Objection at any time.

6.4.    The Parties may file with the Court written responses to any filed Objections no later than three Days before the Fairness Hearing.

6.5.    Class Members have no right to object to the PAGA Settlement.

6.6.    If the Court rejects the Class Member's objection, the Class Member will still be bound by the terms of the Agreement including the releases herein.

## 7.    FAIRNESS HEARING AND APPLICATION FOR FINAL APPROVAL

7.1.    After the Bar Date, in accordance with the schedule set by the Court in the Preliminary Approval Order and in advance of the Fairness Hearing, Plaintiffs' Counsel shall file supporting documents and materials for final approval of the Settlement ("Motion for Final Approval").  The Motion for Final Approval will include a compliance affidavit from the Settlement Administrator; an application for Attorneys' Fees and Costs and Service Awards; supporting affidavits and documents from Plaintiffs' Counsel regarding the fairness, adequacy, and reasonableness of the Settlement or any aspect related to the

Agreement; and a proposed Final Approval Order. Plaintiffs' Counsel shall submit the Motion for Final Approval and the proposed Final Approval Order to Defendants' Counsel for their review no less than five (5) days prior to the filing of such papers with the Court.

7.2.    At the Fairness Hearing, and through the Motion for Final Approval, the Parties shall request that the Court, among other things: (1) finally certify the Class and Collective for purposes of settlement only; (2) approve the Settlement and this Agreement as fair, reasonable, adequate, and binding on all Participating Class Members, Participating Collective Members, and PAGA Members; (3) order the Settlement Administrator to distribute Electronic Payments and Settlement Checks to Putative Collective Members, Participating Class Members, and to distribute PAGA Settlement Checks and the PAGA Check Enclosure Letter to PAGA Members; (4) order Service Awards, Attorneys' Fees and Costs, settlement administration costs, and the LWDA Payment to be paid from the QSF; (5) order dismissal with prejudice of the Litigation, as set forth herein; (6) order entry of the Final Approval Order, in accordance with this Agreement; and (7) retain jurisdiction over the interpretation, implementation, and enforcement of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation or enforcement of this Agreement and of the settlement contemplated hereby.

## 8.    TERMINATION OF AGREEMENT

8.1.    In the event that the Agreement is not approved by the Court in the Litigation for any reason (other than the amount of Attorneys' Fees or Costs, or the amount of the Service Awards), the Settling Parties will attempt to address any concerns raised by the Court and resubmit a revised settlement agreement if possible. If the Parties cannot agree on a revised settlement agreement or if the Court denies the approval of a renegotiated settlement agreement, this Agreement or the re-negotiated agreement shall be terminated as of the date the Court's order denying approval of the Agreement or renegotiated agreement was entered. Upon termination of this Agreement or any renegotiated agreement: (A) this Agreement and, if applicable, the renegotiated agreement shall have no force or effect and no Party shall be bound by any of its terms; (B) The Settling Parties stipulate that the case shall return to its status prior to December 17, 2024, with all statutes of limitations for the Plaintiffs and Putative Collective Members tolled from December 17, 2024 through the date that the Court's final order denying settlement approval, with all previously issued orders still in effect; and (C) nothing in this Agreement shall be used or construed by or against any Party as a determination, admission, or concession of any issue of law or fact in the Litigation; and the Parties do not waive, and unless otherwise stated in this Agreement, instead expressly reserve, their respective rights with respect to the prosecution and defense of the Litigation.

## 9.    SETTLEMENT TERMS

### 9.1.    Settlement Amount

a.    **Total Settlement Amount.** Defendants agree to pay a Total Settlement Amount of $48,500,000.00.

      **b.**      **Funding Date.** Defendants shall pay the Total Settlement Amount into the Qualified Settlement Fund established by the Settlement Administrator on or before the Funding Date.

**9.2.**    **Unclaimed Funds.**

      **a.**      **Class Members Who Do Not Participate.** The Settlement Amounts allocated to Class Members who submit Opt-Out Statements, if any, will become part of the Net Fund to be distributed to Putative Collective Members and Participating Class Members.

      **b.**      **Participating Class Members and Putative Collective Members.** Any portion of the Total Settlement Fund allocated to Participating Class Members or Putative Collective Members not distributed, including any interest accrued on the Qualified Settlement Fund, and any check not cashed after the expiration of the Cashing Period, shall become part of the Net Fund to be distributed to Participating Class Members and Putative Collective Members who cashed or otherwise negotiated a settlement check, or if a second distribution is impractical on the basis that the amount remaining in the Net Fund is similar to or less than the cost of a second distribution, it shall be donated to a *cy pres* designee jointly selected by the parties. The parties will agree on a *cy pres* beneficiary, subject to the *cy pres* doctrine and subject to approval by the Court.

      **c.**      **PAGA Members.** Any PAGA Settlement Check not cashed after the expiration of the Cashing Period shall revert to the California unclaimed property fund under the name of the PAGA Member.

**9.3.**    **Attorneys' Fees and Costs.**

      **a.**      At the Fairness Hearing and through the Motion for Final Approval, Plaintiffs' Counsel will petition the Court for an Order of attorneys' fees of up to one-third of the Total Settlement Amount, or $16,166,666.66, plus reimbursement of their reasonable out-of-pocket costs incurred in prosecuting this matter, to be paid from the QSF. This amount will cover all work performed to date and all work to be performed in connection with the approval by the Court of this Agreement and the final conclusion of this matter.

      **b.**      The substance of Plaintiffs' Counsel's application for Attorneys' Fees and Costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Agreement. The outcome of any proceeding related to Plaintiffs' Counsel's application for fees and expenses shall not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval. Any amount not approved by the Court will become part of the Net Fund to be distributed to Putative Collective Members and Participating Class Members.

    **c.**    The Released Parties shall have no liability to Plaintiffs' Counsel arising from any claim to any portion of any Attorneys' Fees and Costs. Plaintiffs' Counsel assumes full responsibility and liability for taxes owed on the Attorneys' Fees and Costs and holds Released Parties harmless from any dispute or controversy regarding any division or sharing of any of the Attorneys' Fees and Costs.

**9.4.**    **Service Awards.**

    **a.**    In consideration of the services rendered to the Class and Collective, Plaintiffs will apply to the Court to receive up to $25,000 each as Service Awards from the Total Settlement Amount and opt-in plaintiffs, Yitao Huang and Dawn Gatti, who participated in discovery ("Opt-In Plaintiffs") will apply for service awards of $15,000 each.

    **b.**    The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Agreement. The outcome of the Court's ruling on the application for Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval, Final Approval Order, or the fairness or reasonableness of this Agreement. Defendants will not oppose Plaintiffs' application for Service Awards. Any amount not approved by the Court will become part of the Net Fund to be distributed to Putative Collective Members and Participating Class Members.

    **c.**    A general release as set forth in Section 10.4 will be executed by Plaintiffs and Opt-In Plaintiffs, Yitao Huang and Dawn Gatti, in consideration for receiving and accepting the Service Award.

    **d.**    Plaintiffs and Opt-In Plaintiffs will receive an IRS Form 1099 for the Service Awards and will be responsible for correctly characterizing this payment for tax purposes and to pay any taxes owing. Plaintiffs and Opt-In Plaintiffs hereby hold Wells Fargo and Plaintiffs' Counsel harmless for and against any action or liability, including but not limited to any costs and/or legal fees incurred by Wells Fargo if any tax authority should dispute the characterization of this payment.

**9.5.**    **PAGA Fund and PAGA Payments.** $1,940,000.00 of the Total Settlement Amount shall be allocated for the PAGA Fund, of which $1,455,000.00 shall be allocated for the LWDA Payment and $485,000.00 shall be allocated for the PAGA Payment and paid to PAGA Members, pursuant to the allocation formula as set forth below in Section 9.7. If the Court approves a PAGA Fund less than the amount requested, any amount not approved by the Court will become part of the Net Fund to be distributed to Putative Collective Members and Participating Class Members.

**9.6.**    **Class and Collective Members' Payments.**

    **a.**    Allocation to Class and Putative Collective Members.

        **1.**    California Class Members whose employment with Wells Fargo was terminated prior to March 27, 2021 or whose employment with Wells Fargo is ongoing will receive 1.9 points for each Eligible California Workweek;

        **2.**    California Class Members whose employment with Wells Fargo was terminated on or after March 27, 2021 will receive 2 points for each Eligible California Workweek;

        **3.**    Colorado Class Members will receive 2.5 points for each Eligible Colorado Workweek;

        **4.**    Putative Collective Members will receive 1 point for each Eligible FLSA Workweek;

    **b.**    To calculate each Class and Collective Member's initial proportionate share:

        **1.**    Add all points for all Class and Putative Collective Members together to obtain the "Denominator";

        **2.**    Divide the number of points for each Class and Collective Member by the Denominator to obtain each Class and Collective Member's "Portion of the Net Settlement Fund";

        **3.**    Multiply each Class and Collective Member's Portion of the Net Settlement Fund by the sum of the Net Fund to determine each Class and Collective Member's initial Settlement Amount;

        **4.**    For each Class and Collective Member, their Settlement Amount will be the amount of their Settlement Check, except that PAGA Members will also be entitled to an additional PAGA Settlement Amount.

**9.7.**    **Allocation to PAGA Members.**  PAGA Members will receive an additional allocation separate from the allocation above.  PAGA Members' estimated proportionate share of the PAGA Payment shall be determined by the Settlement Administrator pursuant to the following formula:

    **a.**    PAGA Members will receive one (1) point for each Eligible PAGA Pay Period;

    **b.**    To calculate each PAGA Member's proportionate share of the PAGA Payment:

        **a.**    Add all points for all PAGA Members together to obtain the "PAGA Denominator";

      **b.**    Divide the number of points for each PAGA Member by the PAGA Denominator to obtain each PAGA Member's "Portion of the PAGA Payment";

      **c.**    Multiply each PAGA Member's Portion of the PAGA Payment by the PAGA Members' Payment to determine each PAGA Member's PAGA Settlement Amount;

      **d.**    Each PAGA Member will receive a separate PAGA Settlement Amount in addition to the amount that they are entitled to recover as a Class Member.

**9.8.**  **Settlement Amount Disputes.** The calculation of Eligible Workweeks shall be determined based on Defendants' business records in accordance with this Agreement. The Notice shall advise Class and Putative Collective Members of their Eligible Workweeks. If a Class or Putative Collective Member disputes Wells Fargo's records and/or the calculation of their Settlement Payment, they must provide written documentation supporting their contention to the Settlement Administrator within the Cashing Period. Wells Fargo's records are presumed to be correct unless the Class or Putative Collective Member proves otherwise with documentary evidence. The Settlement Administrator will evaluate the information that the Class or Collective Member provides and will make the final decision as to any dispute.

**9.9.**  **Timing of Payments.** Within 7 days after the Funding Date, the Settlement Administrator will mail Settlement Checks to Putative Collective Members (along with a Notice substantially in the form of **Exhibit D**), and to Participating Class Members and PAGA Members who did not timely elect Electronic Payment. The Settlement Administrator will contemporaneously issue Electronic Payments to Participating Class Members and PAGA Members who timely elected Electronic Payment. The Settlement Administrator will contemporaneously issue any approved Service Awards to Plaintiffs, the LWDA Payment to the LWDA, and any Court-approved Attorneys' Fees and Costs to Plaintiffs' Counsel by wire transfer.

**9.10.**  **Cashing Period.**

      **a.**    Participating Class Members, Putative Collective Members, and PAGA Members who did not timely elect Electronic Payment will have one-hundred eighty (180) Days from the date that Settlement Checks are mailed by the Settlement Administrator to cash, deposit, or otherwise negotiate their checks.

      **b.**    **Reminders.** The Parties agree they will use robust efforts to ensure that Settlement Checks are received by Participating Class Members, Putative Collective Members, and PAGA Members, including the Settlement Administrator's use of mail, personal email, and other efforts deemed prudent by the Settlement Administrator, for robust contact attempts and multiple reminders to timely cash checks prior to the 180-day deadline. The Settlement Administrator will send reminders 45 days after the issuance of checks via mail and personal e-mail to Putative Collective

Members, Participating Class Members, and PAGA Members who have not yet cashed their Settlement Checks or received Electronic Payments, reminding them to cash their checks. After 90 days from the issuance of the checks, the Settlement Administrator shall provide a report of any uncashed checks to the Parties' counsel, and the Settlement Administrator will make reasonable efforts to contact Putative Collective Members, Participating Class Members, and PAGA Members who have not yet cashed their Settlement Checks. The settlement administrator will take all reasonable steps to obtain the correct contact information for any Class Members and Putative Collective Members for whom the check is returned as undeliverable and shall attempt a re-mailing to any Class Member and Putative Collective Members for whom it obtains more recent contact information.

**9.11. Tax Characterization and Defendants' Payroll Tax Responsibility.**

    **a.**    For Participating California and Colorado Class Members the Settlement Administrator shall allocate 50% of the payment as W-2 wage payments and 50% of the payment as 1099 non-wage compensation as liquidated damages, statutory penalties, and interest.

    **b.**    For Participating Collective Members, the Settlement Administrator shall allocate 50% of the payment as W-2 wage payments and 50% of the payment as 1099 non-wage compensation as liquidated damages, statutory penalties, and interest.

    **c.**    For PAGA Members, the Settlement Administrator shall allocate 100% of the payment as 1099 non-wage compensation as civil penalties.

    **d.**    Payments treated as W-2 wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and Social Security number on an IRS Form W-2. Payments treated as liquidated damages, statutory penalties, civil penalties, and interest shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, issuing the Electronic Payments, Settlement Checks and Service Awards and issuing IRS Forms W-2 and Forms 1099. Payments of Attorneys' Fees and Costs shall be made without withholding and shall be reported to the IRS and to Plaintiffs' Counsel on IRS Form 1099. Payment of the Service Awards will be reported as deemed appropriate by the Settlement Administrator.

    **e.**    The employee portion of all applicable income taxes for the wage payments

and any tax responsibility for the non-wage payments will be the sole responsibility of the individual Participating Class Member and/or Participating Collective Member.

Defendants and the Settlement Administrator shall exchange such information as is necessary for the Settlement Administrator to make proper tax withholdings and comply with its tax reporting obligations.

f.      Payments made under the Settlement shall not obligate Wells Fargo to confer any additional benefits or make any additional payments to Class Members or Participating Collective Members (such as 401(k) contributions or bonuses) beyond those specified in this Agreement.

## 10.    RELEASE OF CLAIMS

**10.1.    Collective Release.** Each Putative Collective Member or Participating Class Member who opts into the Settlement by either electing Electronic Payment or cashing or otherwise negotiating their Settlement Check during the Cashing Period shall, as a result of electing Electronic Payment or cashing or otherwise negotiating their Settlement Check during the Cashing Period, release and discharge the Released Parties from the Released Collective Claims as follows:

a.      Each Participating Class Member who timely elects to receive their Settlement Amount via Electronic Payment shall, as part of such election, electronically opt into the Settlement and agree to release and discharge the Released Parties from the Released Collective Claims.  To facilitate this opt-in and release of claims, the Settlement Administrator's website shall display the release of claims language below and shall require that each Settlement Class Member electronically agree to such language as part of electing the Electronic Payment option.  To receive Electronic Payment, the Settlement Class Member must, prior to entry of the Final Approval Order, elect to receive their Settlement Amount via Electronic Payment and electronically agree to the release of claims language below.

**RELEASE OF CLAIMS:**

By electing to receive my Settlement Amount via Electronic Payment, I (i) consent, agree, and opt in to be a party plaintiff in the case entitled *Perez et. al. v. Wells Fargo Bank, N.A. et. al*, Case No. 2:24-cv-4077 pending in the United States District Court of the Central District of California, (ii) designate Outten & Golden LLP to represent me for all purposes in the Litigation, and to make decisions on my behalf, along with Plaintiffs, concerning the Litigation, (iii) agree to be bound by the settlement negotiated and approved in the Litigation, and (iv) forever and fully release the Released Parties from the Released Collective Claims.

b.      Each Participating Class Member who does not timely elect to receive their

Settlement Amount via Electronic Payment and each Putative Collective Member will receive a Settlement Check, and those who cash or otherwise negotiate their Settlement Check during the Check Cashing Period will, by virtue of cashing or otherwise negotiating their Settlement Check, opt into the Settlement and release and discharge the Released Parties from the Released Collective Claims.  To facilitate this opt-in and release of claims, all such Settlement Checks shall contain, on the back of the check, the following "back of the check" release.  If a Putative Collective Member or Participating Class Member attempts to alter this language on the back of the check, any such alterations will be null and void and have no legal effect.  The release language will be effective and controlling:

**RELEASE OF CLAIMS:**

By signing and/or cashing this check, I (i) consent, agree, and opt in to be a party plaintiff in the case entitled *Perez et. al. v. Wells Fargo Bank, N.A. et. al*, Case No. 2:24-cv-4077 pending in the United States District Court of the Central District of California, (ii) designate Outten & Golden LLP to represent me for all purposes in the Litigation, and to make decisions on my behalf, along with Plaintiffs, concerning the Litigation, (iii) agree to be bound by the settlement negotiated and approved in the Litigation, and (iv) forever and fully release the Released Parties from the Released Collective Claims.

10.2.   **Class Release.** By operation of the entry of the Final Approval Order, except as to rights or claims as may be created by this Agreement, each Participating Class Member forever and fully releases the Released Parties from the Released Class Claims.

10.3.   **PAGA Release.** By operation of the entry of the Final Approval Order, except as to rights or claims as may be created by this Agreement, each PAGA Member forever and fully releases the Released Parties from the Released PAGA Claims.

10.4.   **Release by Plaintiffs and Opt-In Plaintiffs Huang and Gatti.**

a.   In the event the Court approves and Plaintiffs and Opt-In Plaintiffs participating in discovery receive and accept a Service Award, they will each additionally waive, release, and discharge Released Parties from all demands, claims and actions, whether known or unknown, relating to their employment or the termination of their employment with Defendants, including but not limited to claims under the Americans With Disabilities Act, Fair Labor Standards Act (including but not limited to claims for overtime compensation), Equal Pay Act, Title VII of the Civil Rights Act of 1964, Civil Rights Acts of 1866, 1871 and 1991, Family and Medical Leave Act, Age Discrimination in Employment Act, and any other federal, state or local statute, regulation, and order, and in common law, through the date this Agreement is executed; provided, however, that Plaintiffs do not waive the right to file a charge or complaint with any administrative agency, but do waive any right to recover or receive any damages

or other personal relief based on any demand, claim, or action waived in this Paragraph brought on their own behalf or by any third party, including as a member of any collective or class action. Plaintiffs do not release any claim or right that cannot be released as a matter of law. Plaintiffs further do not release any claims under the National Labor Relations Act or non-monetary claims for expungement related solely to form U-5 disclosures, subject to the jurisdiction of the Financial Industry Regulatory Authority ("FINRA") as well as any other forum necessary to confirm, appeal, or effectuate any FINRA award. Plaintiff Perez also does not release any claim she may have under the Equal Pay Act but does waive any right she would have to bring that claim on behalf of others including a representative, collective or class action proceeding. As a material term of this Agreement, Plaintiff Simunac and Opt-in Plaintiff Huang further agree that as of the Effective Date of this Agreement, all of their rights under Section 1542 of the Civil Code of the State of California are waived as to any claims against the Released Parties. Section 1542 provides as follows: **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that, if known by him or her would have materially affected his or her settlement with the debtor or released party.**

**b.** Wells Fargo represents that it is presently not aware of any claims against Plaintiffs or Opt-In Plaintiffs or any facts or circumstances giving rise to any claims against Plaintiffs or Opt-In Plaintiffs.

## 11.  PUBLICITY

The Parties and their counsel agree to keep the terms of this settlement confidential prior to moving for preliminary approval. Following the filing of the motion for preliminary approval, Plaintiffs' counsel shall not publicize the settlement through any media or press releases or other mass media efforts, but nothing shall preclude them from responding to class member communications as necessary to discharge their ethical duties or from describing the terms of the settlement on their respective firm websites. If Plaintiffs' counsel are contacted by the press about the settlement, their response will be limited to the following: "We are pleased with the result we have achieved for our clients."

## 12.  PARTIES' AUTHORITY

**12.1.** The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and to bind the Parties hereto to the terms and conditions hereof.

## 13.  MUTUAL COOPERATION

**13.1.** The Parties agree to reasonably cooperate with each other and to take all steps necessary and appropriate to obtain the Court's approval of this Agreement and all of its terms and to effectuate the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the

terms of this Agreement. The Parties to this Agreement shall use their commercially reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate this Agreement and the terms set forth herein.

**13.2.** The Parties agree that upon execution of this Agreement the litigation shall be stayed except to effectuate the terms of this Agreement.

## 14.  NO ADMISSION OF LIABILITY

**14.1.** The Released Parties deny all of the allegations made by Plaintiffs and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted herein. Nonetheless, without admitting or conceding any liability or damages whatsoever, the Released Parties have agreed to settle these claims on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation. Nothing in this Agreement shall be deemed or used as an admission of liability by the Released Parties, nor as an admission that a class or collective should be certified for any purpose other than settlement purposes.

## 15.  INTERPRETATION AND ENFORCEMENT/MISCELLANEOUS TERMS

**15.1.  No Assignment.** Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in their claims, or any related action, and any attempt to do so shall be of no force or effect.

**15.2.  Entire Agreement.** This Agreement (including its Exhibits) constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

**15.3.  Binding Effect**. This Agreement shall be binding upon the Parties. Because the members of the Class and the Putative Collective are so numerous, it is impossible or impractical to have each Class and Collective Member execute this Agreement. The Notice, Exhibits A-D hereto, and other forms of notice described herein will advise all Class and Collective Members of the binding nature of the release and such shall have the same force and effect, to the extent permitted by law, as if this Agreement were executed by each Class and Collective Member.

**15.4.  Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**15.5.  Captions.** The captions or headings of the Sections and paragraphs of this Agreement have

been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**15.6.  Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**15.7.  Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of California, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**15.8.  Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

**15.9.  Waivers, etc. to Be in Writing.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment, with any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**15.10.  When Agreement Becomes Effective; Counterparts**.  This Agreement shall become effective upon its full execution by the Parties.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same original instrument.

**15.11.  Facsimile, Electronic, and Email Signatures.**  Any Party may execute this Agreement by signing, including by electronic means, and transmitting that signature page via facsimile, email, or electronic signature technology to counsel for the other party.  Any signature made and transmitted by facsimile, email, or electronic signature technology for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile, email, or electronic signature technology.

**15.12.  Signatories.**  This Agreement is valid and binding if signed by Defendants' authorized representatives and Plaintiffs.

**WE AGREE TO THESE TERMS.**

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS]**

By: _____
Sabrina Perez

Dated: _____August 28_____, 2025

By: _____
Aric Vickrey

Dated: _____, 2025

By: _____
Tanner Tom

Dated: _____, 2025

By: _____
Andrej Simunac

Dated: _____, 2025

By: _____
Lilyana Aiwas

Dated: _____, 2025

By: _____
Wells Fargo Bank, N.A.
CEO of Consumer, Small &
Business Banking

Dated: _____, 2025

By: _____
Wells Fargo & Company
CEO of Consumer, Small &
Business Banking

Dated: _____, 2025

Approved as to form and content on behalf of
Named Plaintiffs:

By: _____
Michael J. Scimone
Outten & Golden LLP

Dated: _____September 3_____, 2025

By: _____
Hunter Pyle
Hunter Pyle Law, PC

Dated: _____, 2025

Approved as to form and content on behalf of
Defendants:

By: _____
Theresa Kading
Kading Briggs LLP

Dated: _____, 2025

By:_____  
     Sabrina Perez

Dated:_____, 2025

By: _____  
     Aric Vickrey

Dated:___08/28____, 2025

By:_____  
     Tanner Tom

Dated:_____, 2025

By:_____  
     Andrej Simunac

Dated:_____, 2025

By:_____  
     Lilyana Aiwas

Dated:_____, 2025

By: _____  
     Wells Fargo Bank, N.A.  
     CEO of Consumer, Small & Business Banking

Dated: _____, 2025

By: _____  
     Wells Fargo & Company  
     CEO of Consumer, Small & Business Banking

Dated: _____, 2025

Approved as to form and content on behalf of Named Plaintiffs

By: _____  
     Michael J. Scimone  
     Outten & Golden LLP

Dated: ___September 3___, 2025

By: _____  
     Hunter Pyle  
     Hunter Pyle Law, PC

Dated: _____, 2025

Approved as to form and content on behalf of Defendants:

By: _____  
     Theresa Kading  
     Kading Briggs LLP

Dated: _____, 2025

By:_____
     Sabrina Perez

Dated:_____, 2025

By:_____
     Aric Vickrey

Dated:_____, 2025

By:_____
     Tanner Tom

Dated:  August 8  , 2025

By:_____
     Andrej Simunac

Dated:_____, 2025

By:_____
     Lilyana Aiwas

Dated:_____, 2025

By:_____
     Wells Fargo Bank, N.A.
     CEO of Consumer, Small &
     Business Banking

Dated: _____, 2025

By:_____
     Wells Fargo & Company
     CEO of Consumer, Small &
     Business Banking

Dated: _____, 2025

Approved as to form and content on behalf of Named Plaintiffs

By:_____
     Michael J. Scimone
     Outten & Golden LLP

Dated:  September 3  , 2025

By:_____
     Hunter Pyle
     Hunter Pyle Law, PC

Dated: _____, 2025

Approved as to form and content on behalf of Defendants:

By:_____
     Theresa Kading
     Kading Briggs LLP

Dated: _____, 2025

By:_____
      Sabrina Perez

Dated:_____, 2025

By:_____
      Aric Vickrey

Dated:_____, 2025

By:_____
      Tanner Tom

Dated:_____, 2025

By:_____
      Andrej Simunac

Dated:_____09,02_____, 2025

By:_____
      Lilyana Aiwas

Dated:_____, 2025


By:_____
      Wells Fargo Bank, N.A.
      CEO of Consumer, Small &
      Business Banking

Dated:_____, 2025


By:_____
      Wells Fargo & Company
      CEO of Consumer, Small &
      Business Banking

Dated:_____, 2025


Approved as to form and content on behalf of Named Plaintiffs:

By:_____
      Michael J. Scimone
      Outten & Golden LLP

Dated:___September 3___, 2025

By:_____
      Hunter Pyle
      Hunter Pyle Law, PC

Dated:_____, 2025


Approved as to form and content on behalf of Defendants:

By:_____
      Theresa Kading
      Kading Briggs LLP

Dated:_____, 2025

By:_____
　　　Sabrina Perez

Dated:_____, 2025

By:_____
　　　Aric Vickrey

Dated:_____, 2025

By:_____
　　　Tanner Tom

Dated:_____, 2025

By:_____
　　　Andrej Simunac

Dated:_____, 2025

By:_____
　　　Lilyana Aiwas

Dated:___08,31,_____, 2025

By:_____
　　　Wells Fargo Bank, N.A.
　　　CEO of Consumer, Small &
　　　Business Banking

Dated: _____, 2025

By:_____
　　　Wells Fargo & Company
　　　CEO of Consumer, Small &
　　　Business Banking

Dated: _____, 2025

Approved as to form and content on behalf of
Named Plaintiffs:

By:_____
　　　Michael J. Scimone
　　　Outten & Golden LLP

Dated: September 3____, 2025

By:_____
　　　Hunter Pyle
　　　Hunter Pyle Law, PC

Dated: _____, 2025

Approved as to form and content on behalf of
Defendants:

By:_____
　　　Theresa Kading
　　　Kading Briggs LLP

Dated: _____, 2025

By:_____
       Sabrina Perez

Dated:_____, 2025

By:_____
       Aric Vickrey

Dated:_____, 2025

By:_____
       Tanner Tom

Dated:_____, 2025

By:_____
       Andrej Simunac

Dated:_____, 2025

By:_____
       Lilyana Aiwas

Dated:_____, 2025

By: *Saul Van Beurden*
Wells Fargo Bank, N.A.
CEO of Consumer, Small & Business Banking

Dated: _9/2/2025_, 2025

By: *Saul Van Beurden*
Wells Fargo & Company
CEO of Consumer, Small & Business Banking

Dated: _9/2/2025_, 2025

Approved as to form and content on behalf of Named Plaintiffs:

By:_____
       Michael J. Scimone
       Outten & Golden LLP

Dated: _September 3_, 2025

By:_____
       Hunter Pyle
       Hunter Pyle Law, PC

Dated:_____, 2025

Approved as to form and content on behalf of Defendants:

By: _____
       Theresa Kading
       Kading Briggs LLP

Dated: _____, 2025

By:_____
      Sabrina Perez

Dated:_____, 2025

By:_____
      Aric Vickrey

Dated:_____, 2025

By:_____
      Tanner Tom

Dated:_____, 2025

By:_____
      Andrej Simunac

Dated:_____, 2025

By:_____
      Lilyana Aiwas

Dated:_____, 2025

By:_____
      Wells Fargo Bank, N.A.
      CEO of Consumer, Small & Business Banking

Dated:_____, 2025

By:_____
      Wells Fargo & Company
      CEO of Consumer, Small & Business Banking

Dated:_____, 2025

Approved as to form and content on behalf of Named Plaintiffs:

By:_____
      Michael J. Scimone
      Outten & Golden LLP

Dated: _September 3_, 2025

By:_____
      Hunter Pyle
      Hunter Pyle Law, PC

Dated: _September 3_, 2025

Approved as to form and content on behalf of Defendants:

By:_____
      Theresa Kading
      Kading Briggs LLP

Dated:_____, 2025

By:_____
    Sabrina Perez

Dated:_____, 2025

By:_____
    Aric Vickrey

Dated:_____, 2025

By:_____
    Tanner Tom

Dated:_____, 2025

By:_____
    Andrej Simunac

Dated:_____, 2025

By:_____
    Lilyana Aiwas

Dated:_____, 2025

By:_____
    Wells Fargo Bank, N.A.
    CEO of Consumer, Small &
    Business Banking

Dated:_____, 2025

By:_____
    Wells Fargo & Company
    CEO of Consumer, Small &
    Business Banking

Dated:_____, 2025

Approved as to form and content on behalf of Named Plaintiffs:

By:_____
    Michael J. Scimone
    Outten & Golden LLP

Dated: September 3 , 2025

By:_____
    Hunter Pyle
    Hunter Pyle Law, PC

Dated: _____, 2025

Approved as to form and content on behalf of Defendants:

By:_____
    Theresa Kading
    Kading Briggs LLP

Dated: Sept. 2 , 2025

By: _____
Yitao Huang

Dated: ___09/02/2025___ 2025

By: _____
Dawn Gatti

Dated: _____, 2025

By:_____
Yitao Huang

Dated:_____, 2025

By:_____
Dawn Gatti

Dated:_____09/02_____, 2025

# Exhibit A: Notice to California Class Members with PAGA Claims



United States District Court for the Central District of California

*Perez, et al. v. Wells Fargo Bank, N.A., et al.*

Case No. 24-cv-04077-SRM-AS

# Notice of Proposed Class Action Settlement
## *Authorized by the U.S. District Court*

| | | |
|---|---|---|
| **You are receiving this notice because Wells Fargo's records show that you work or worked as an eligible employee in California during the relevant period.** | **You are eligible to receive approximately $[net amount] from the proposed settlement described in this notice.** | **What you should do now:**<br><br>1. **Read this notice.**<br><br>2. **Decide whether to participate in the settlement.** |

Important things to know:

- If you take no action, you will be bound by the settlement, you will receive a settlement payment, and your rights will be affected.

- The Settlement was preliminarily approved by the Court on _____ but the Court still needs to finally approve the settlement. Settlement payments will be made if the Court finally approves the settlement. Please be patient.

- You can learn more at: [website].

2

# About This Notice

## What is this case about?

Four current and former employees filed a case, *Perez, et al. v. Wells Fargo Bank, N.A., et al.*, claiming that Wells Fargo misclassified Premier Bankers, Premier Banker 2s, and Senior Branch Premier Bankers as exempt from overtime protections and failed to pay proper overtime and other wages to those employees.

Another former employee filed a similar case seeking penalties under California's Private Attorneys General Act ("PAGA") based on the same allegation. That employee has since been added to this case for purposes of this settlement.

Wells Fargo denies that it did anything wrong.  The Court has not decided this case in favor of either side.  Both sides settled the claims to avoid the risk and expense of litigation.

You can learn more at: [website].

## Why did I get this notice?

Wells Fargo's records show that you are part of the proposed settlement class.  People are eligible to be part of the settlement if they worked in California between March 27, 2020 and [release date], in Colorado between February 2, 2021 and [release date], and/or in any other state between February 22, 2021 and [release date] as exempt-classified Premier Bankers, Premier Banker 2s, and/or Senior Branch Premier Bankers.

The Court authorized this notice to you because you have the right to know about a proposed class and collective action settlement that affects your rights, and about all of your options, before the Court decides whether to finally approve the settlement.  This notice explains the case, your legal rights, and what benefits are available.

3

## What do I do next?

Read this notice to understand the settlement.  Then, decide if you want to:

| | |
|---|---|
| **DO NOTHING AND GET A PAYMENT** | You will be sent a settlement check in the amount of approximately $[net amount] and you will release claims against Wells Fargo as described in this Notice.<br><br>If you would prefer to receive your settlement payment electronically, you can choose to do so by visiting this website: [EMAIL VERSION: www.[website].com] / [MAILED VERSION: www.[website].com AND QR CODE]. |
| **EXCLUDE YOURSELF ("OPT OUT")** | You will receive no payment from this settlement and retain your right to bring another case against Wells Fargo about the same issues.<br><br>However, you cannot opt out of the PAGA portion of the settlement. |
| **OBJECT** | Tell the Court why you don't like the settlement, but remain a part of the settlement class and give up the ability to sue Wells Fargo for released claims as described in this Notice. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

## What are the most important deadlines?

Your deadline to object or opt out: **[date]**
Settlement approval hearing: **[date]**

# About the Lawsuit

## What does the settlement provide?

4

Without admitting any wrongdoing, Wells Fargo has agreed to pay $48,500,000 into a settlement fund.  This money is divided among (1) eligible employees; (2) attorneys' fees of up to one-third of the total settlement amount and reasonable expenses incurred in the lawsuit ($[AMOUNT]), as approved by the Court; (3) the cost of settlement administration ($[AMOUNT]); (4) a payment to eligible employees and the State of California to resolve claims under California's Private Attorneys General Act ("PAGA") ($[AMOUNT]); and (5) service awards for the people who brought this case to compensate them for their work on the case and the outcome achieved for the classes, as approved by the Court ($[AMOUNT]).

Your share of the settlement, if you choose to participate, would be approximately $[net amount].

## How is my payment calculated?

The calculation of your payment depends on:

- Your weeks worked as an exempt-classified Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker between March 27, 2020 and [add release date] if you worked in California.

- Whether you worked in California, Colorado, and/or another state.

- For PAGA penalties, the number of pay periods that you worked in California in a relevant position between February 28, 2023, and [preliminary approval date].

The settlement administrator used information from Wells Fargo's records to calculate your payment based on the number of weeks you worked for Wells Fargo in one of the relevant positions during the relevant time periods.  Eligible employees who worked in California receive an additional amount for weeks worked because the damages available in the case are higher under California law than under federal law.

Based on the allocation formula that has been approved by the Court, you will receive a settlement payment of approximately $[NET

5

AMOUNT], based on [insert workweeks] eligible workweeks.  If you dispute the number of workweeks or pay periods used to calculate your payment, you must provide written documentation supporting your position to the Administrator by _____.

One-half (1/2) of your settlement payment will be treated as wages and subject to withholdings and deductions (paid on a W2) and one-half (1/2) will be treated as non-wage compensation with no taxes withheld (paid on a 1099).  As a result of the settlement payments made to Class Members, Wells Fargo is not required to match contributions or include settlement payments as benefits-eligible earnings under any of Wells Fargo's benefits plans, bonus programs, or compensation policies.

*The lawyers cannot advise you on taxes associated with this payment. Please seek your own personal tax advice.*

## Do I have a lawyer in this case?

In a class action settlement, the Court appoints lawyers to represent the class and its members.  For this settlement, the Court has appointed the following lawyers, who are called "Class Counsel":

Michael J. Scimone
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
[insert phone number]
WellsFargoSPB@outtengolden.com

Adam Koshkin & Kaelyn Mahar
Outten & Golden LLP
1 California St., 12th Floor
San Francisco, CA 94111
[insert phone number]
WellsFargoSPB@outtengolden.com

Hunter Pyle
Bradan Litzinger
Hunter Pyle Law, PC
505 14th Street, Suite 600
Oakland, CA 94612

These are the lawyers who represented the plaintiffs in the case and negotiated the settlement.  The lawyers' fees will be paid from the settlement fund.  **You will not have to pay the lawyers directly.**  You do not need to retain your own lawyer, but you are free to do so at

your own expense.

## Are there more details about the settlement?

This notice summarizes the proposed settlement.  More details are in the settlement agreement.  To get a copy of the settlement agreement please visit:

[insert QR code for mailing/link for email]

To get answers to your questions, contact the Settlement Administrator at [contact info] or Class Counsel at [contact info].

## What happens next in this case?

The Court will hold a fairness hearing to decide whether to finally approve the settlement.  The hearing will be held at:

**Where:** [Courthouse name and address].

**When:** [time] on [date].

Because the settlement of a class action decides the rights of all members of the proposed class, the Court must give final approval to the settlement before it can take effect.  Payments will only be made if the Court grants final approval of the settlement.

You don't have to attend, but you may at your own expense. You may also ask the Court for permission to speak and express your opinion about the settlement.  If the Court does not approve the settlement or the parties decide to end it, it will be void and the case will continue. The date of the hearing may change without further notice to members of the class.  To learn more and confirm the hearing date, go to [website].

# Option 1: Do Nothing, Get a Payment, and Release Claims

7

## How do I participate in the settlement?

**If you wish to participate in the settlement and receive payment, you do not need to take any action.** If the Court grants final approval of the settlement, you will receive a settlement payment of approximately $[**NET AMOUNT**] by mail.

If you would like to receive your payment electronically, you may elect to do so by going to this website to select your payment option: [EMAIL VERSION: www.[website].com] / [MAILED VERSION: www.[website].com AND QR CODE]. If your mailing address has changed, please contact the Settlement Administrator or update your address online at the same website.

## What happens if I participate in the settlement?

You will release claims against Wells Fargo and the other Released Parties.

If you do not opt out, you will release the Released Class Claims against Wells Fargo and the other Released Parties. This means you cannot sue, continue to sue, or be part of any other legal action against Wells Fargo asserting claims raised in this case, or any claims that could have been included in this case based on the same facts alleged in the amended complaint filed on [insert date]. That includes claims for unpaid overtime and minimum wages, claims related to meal and rest periods, claims related to wage statements, and claims for untimely payment of wages. The release only includes claims that accrued during your employment as an exempt-classified Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker between March 27, 2020 and [release date].

If you cash your settlement check or accept an electronic payment, you will opt into the Settlement and will release the Released Collective Claims against Wells Fargo and the other Released Parties.

To review the complete language regarding the release to which you will be bound, please see the full settlement agreement. To get a copy of the settlement agreement please visit:

8

[insert QR code for mailing/link for email]

## When will I receive the money?

At the Court's hearing on [date], the Court will decide whether to finally approve the settlement. This date may change without further notice to class members. Please check [settlement website] to confirm that the date has not changed.

If the Court grants final approval, and the approval order is not appealed, settlement checks and electronic payments are anticipated to be distributed approximately two months after the Court grants final approval. Please be patient and update the settlement administrator if your contact information changes.

# Option 2: Exclude Yourself ("Opt Out")

## What if I don't want to be part of this settlement?

You can opt out of the settlement with respect to the class claims. You cannot opt out of the PAGA portion of the settlement.

If you do opt out, you will not receive payment (except any PAGA Payment if applicable) and cannot object to the settlement. However, you will not be bound or affected by anything that happens in this case and may be able to file your own case.

## How do I opt out?

To opt out of the settlement, you must submit an opt out statement by [date] to the settlement administrator at their address listed below under "Key Resources."

You must include your name, address, telephone number, and a statement indicating your intent to opt out, such as "I opt out of the Wells Fargo wage and hour settlement."

# Option 3: Object to the Settlement

9

## What if I disagree with the settlement?

If you disagree with any part of the settlement but don't want to opt out, you may object.  You must give reasons why you think the Court should not approve the settlement and say whether your objection applies to just you, a part of the class, or the entire class.  The Court will consider your views.  The Court can only approve or deny the settlement — it cannot change the terms of the settlement.  You may, but don't need to, hire your own lawyer to help you.

To object, you must send a letter to the Settlement Administrator that:

1.  is postmarked by [date];

2.  includes the case name and number *Perez, et al. v. Wells Fargo Bank, N.A.*, et al., Case No. 24-cv-04077-SRM-AS;

3.  includes your full name, address and telephone number, and email address;

4.  states the reasons for your objection;

5.  says whether either you or your lawyer intend to appear at the final approval hearing and your lawyer's name; and

6.  your signature.

Mail the letter to the settlement administrator as listed below under "Key Resources."

# PAGA Member Additional Payment

The lawsuit also includes a claim under the Private Attorneys General Act ("PAGA") on behalf of the State of California that sought civil penalties from Wells Fargo for the overtime and other violations that Plaintiffs alleged.

As part of the settlement, Wells Fargo agreed to pay $1,940,000 from the settlement fund to settle the PAGA claim, which will be distributed according to PAGA's requirement that 75% (or $1,455,000) be

10

distributed to the California Labor Workforce Development Agency and the remaining 25% (or $485,000) be paid to PAGA Members.

If you worked for Wells Fargo as an exempt-classified Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker in California from February 28, 2023 through [insert Release Date] ("PAGA Period"), you are a "PAGA Member."

If you are a PAGA Member, and if the Court approves the PAGA settlement, you will release the Released PAGA Claims against the Released Parties.

The Released PAGA Claims include all claims relating to penalties under California's Private Attorney General Act ("PAGA") on the facts in the operative complaint in *Aiwas v. Wells Fargo Bank, N.A.*, No. 24CV075469 (Alameda Cnty. Super. Ct.) and in Plaintiff Aiwas's LWDA notice letter dated February 28, 2024. These include claims that accrued during employment as an exempt-classified Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker in California from February 28, 2023 through [insert Release Date], including PAGA claims for unpaid overtime wages, unpaid minimum wages, claims related to the failure to provide meal and rest breaks and compliant wage statements, and claims related to untimely payment of wages.

This means you cannot sue, continue to sue, or be part of any other legal action against Wells Fargo and/or the other Released Parties asserting any of the Released PAGA Claims. To review the complete language regarding the release to which you will be bound, please see the full settlement agreement. To get a copy of the settlement agreement please visit:

[insert QR code for mailing/link for email]

Your individual PAGA settlement payment will be determined by your proportional share of the $485,000 based on the number of pay periods you worked in a relevant position in California between February 28, 2023 and [insert Release Date].

Even if you choose to opt out of the California class settlement, you will still release the Released PAGA Claims and be sent a check for your portion of the PAGA settlement. If you choose not to cash your PAGA settlement check, the check amount will revert to the California

11

unclaimed property fund.  There is no option to object to the PAGA portion of the settlement.

# Key Resources

| How do I get more information? |
|---|

This notice summarizes the settlement approval. There are more details in the case documents. To get a copy of the case documents or get answers to your questions:

- contact the lawyers who represent the class (information below)
- visit the case website at [website].

| Resource | Case Information |
|---|---|
| **Case website** | [website] |
| **Settlement Administrator** | [Case Administrator]<br>[Street Address]<br>[City, State, Zip Code]<br>[Phone Number] |
| **Class Counsel** | Outten & Golden LLP<br>[insert phone number]<br>WellsFargoSPB@outtengolden.com<br><br>Hunter Pyle Law, PC |
| **Court (DO NOT CONTACT)** | U.S. District Court for the Central District of California<br>U.S. Courthouse<br>350 West First Street, Courtroom 5D<br>Los Angeles, CA 90012 |
|  |  |

# Exhibit B: Notice to California Class Members without PAGA Claims



United States District Court for the Central District of California

*Perez, et al. v. Wells Fargo Bank, N.A., et al.*

Case No. 24-cv-04077-SRM-AS

# Notice of Proposed Class Action Settlement
## *Authorized by the U.S. District Court*

| You are receiving this notice because Wells Fargo's records show that you work or worked as a eligible employee in California during the relevant period. | You are eligible to receive approximately $[net amount] from the proposed settlement described in this notice. | What you should do now:<br><br>1. Read this notice.<br><br>2. Decide whether to participate in the settlement. |
|---|---|---|

Important things to know:

- If you take no action, you will be bound by the settlement, and your rights will be affected.

- The Settlement was preliminarily approved by the Court on ____ but the Court still needs to finally approve the settlement.  Settlement payments will be made if the Court finally approves the settlement.  Please be patient.

- You can learn more at: [website].

# About This Notice

## What is this case about?

Four current and former employees filed a case, *Perez, et al. v. Wells Fargo Bank, N.A., et al.*, claiming that Wells Fargo misclassified Premier Bankers, Premier Banker 2s, and Senior Branch Premier Bankers as exempt from overtime protections and failed to pay proper overtime and other wages to those employees.

Another former employee filed a similar case seeking penalties under California's Private Attorneys General Act ("PAGA") based on the same allegation. That employee has since been added to this case for purposes of this settlement.

Wells Fargo denies that it did anything wrong.  The Court has not decided this case in favor of either side.  Both sides settled the claims to avoid the risk and expense of litigation.

You can learn more at: [website].

## Why did I get this notice?

Wells Fargo's records show that you are part of the proposed settlement class.  People are eligible to be part of the settlement if they worked in California between March 27, 2020 and [release date], in Colorado between February 2, 2021 and [release date], and/or in any other state between February 22, 2021 and [release date] as exempt-classified Premier Bankers, Premier Banker 2s, and/or Senior Branch Premier Bankers.

The Court authorized this notice to you because you have the right to know about a proposed class and collective action settlement that affects your rights, and about all of your options, before the Court decides whether to finally approve the settlement.  This notice explains the case, your legal rights, and what benefits are available.

## What do I do next?

15

Read this notice to understand the settlement.  Then, decide if you want to:

| DO NOTHING AND GET A PAYMENT | You will be sent a settlement check in the amount of approximately $[net amount] and you will release claims against Wells Fargo as described in this Notice.

If you would prefer to receive your settlement payment electronically, you can choose to do so by visiting this website: [EMAIL VERSION: www.[website].com] / [MAILED VERSION: www.[website].com AND QR CODE]. |
|---|---|
| EXCLUDE YOURSELF ("OPT OUT") | You will receive no payment from this settlement and retain your right to bring another case against Wells Fargo about the same issues. |
| OBJECT | Tell the Court why you don't like the settlement, but remain a part of the settlement class and give up the ability to sue Wells Fargo for released claims as described in this Notice. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

## What are the most important deadlines?

Your deadline to object or opt out: **[date]**
Settlement approval hearing: **[date]**

# About the Lawsuit

## What does the settlement provide?

Without admitting any wrongdoing, Wells Fargo has agreed to pay $48,500,000 into a settlement fund.  This money is divided among (1) eligible employees; (2) attorneys' fees of up to one-third of the total settlement amount and reasonable expenses incurred in the lawsuit ($[AMOUNT]), as approved by the Court; (3) the cost of settlement administration ($[AMOUNT]); (4) a payment to eligible employees and

the State of California to resolve claims under California's Private Attorneys General Act ("PAGA") ($[AMOUNT]); and (5) service awards for the people who brought this case to compensate them for their work on the case and the outcome achieved for the classes, as approved by the Court ($[AMOUNT]).

Your share of the settlement, if you choose to participate, would be approximately $[net amount].

## How is my payment calculated?

The calculation of your payment depends on:

- Your weeks worked as an exempt-classified Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker between March 27, 2020  and [add release date] if you worked in California,

- Whether you worked in California, Colorado, and/or another state.

The settlement administrator used information from Wells Fargo's records to calculate your payment based on the number of weeks you worked for Wells Fargo in one of the relevant positions during the relevant time periods.  Eligible employees who worked in California receive an additional amount for weeks worked because the damages available in the case are higher under California law than under federal law.

Based on the allocation formula that has been approved by the Court, you are receiving a settlement payment of approximately $[NET AMOUNT] based on [insert workweeks] eligible workweeks.  If you dispute the number of workweeks or pay periods used to calculate your payment, you must provide written documentation supporting your position to the Administrator by _____.

One-half (1/2) of your settlement payment will be treated as wages and subject to withholdings and deductions (paid on a W2) and one-half (1/2) will be treated as non-wage compensation with no taxes withheld (paid on a 1099).  As a result of the settlement payments made to Class Members, Wells Fargo is not required to match

17

contributions or include settlement payments as benefits-eligible earnings under any of Wells Fargo's benefits plans, bonus programs, or compensation policies.

*The lawyers cannot advise you on taxes associated with this payment. Please seek your own personal tax advice.*

## Do I have a lawyer in this case?

In a class action settlement, the Court appoints lawyers to represent the class and its members. For this settlement, the Court has appointed the following lawyers, who are called "Class Counsel":

Michael J. Scimone
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
[insert phone number]
WellsFargoSPB@outtengolden.com

Adam Koshkin & Kaelyn Mahar
Outten & Golden LLP
1 California St., 12th Floor
San Francisco, CA 94111
[insert phone number]
WellsFargoSPB@outtengolden.com

Hunter Pyle
Bradan Litzinger
Hunter Pyle Law, PC
505 14th Street, Suite 600
Oakland, CA 94612

These are the lawyers who represented the plaintiffs in the case and negotiated the settlement. The lawyers' fees will be paid from the settlement fund. **You will not have to pay the lawyers directly.** You do not need to retain your own lawyer, but you are free to do so at your own expense.

## Are there more details about the settlement?

This notice summarizes the proposed settlement. More details are in the settlement agreement. To get a copy of the settlement agreement please visit:

[insert QR code for mailing/link for email]

18

To get answers to your questions, contact the Settlement Administrator at [contact info] or Class Counsel at [contact info].

## What happens next in this case?

The Court will hold a fairness hearing to decide whether to finally approve the settlement.  The hearing will be held at:

**Where:** [Courthouse name and address].

**When:** [time] on [date].

Because the settlement of a class action decides the rights of all members of the proposed class, the Court must give final approval to the settlement before it can take effect.  Payments will only be made if the Court grants final approval of the settlement.

You don't have to attend, but you may at your own expense. You may also ask the Court for permission to speak and express your opinion about the settlement.  If the Court does not approve the settlement or the parties decide to end it, it will be void and the case will continue. The date of the hearing may change without further notice to members of the class.  To learn more and confirm the hearing date, go to [website].

# Option 1: Do Nothing, Get a Payment, and Release Claims

## How do I participate in the settlement?

**If you wish to participate in the settlement and receive payment, you do not need to take any action.**  If the Court grants final approval of the settlement, you will receive a settlement payment of approximately $**[NET AMOUNT]** by mail.

If you would like to receive your payment electronically, you may elect to do so by going to this website to select your payment option: [EMAIL VERSION: www.[website].com] / [MAILED VERSION: www.[website].com AND QR CODE].  If your mailing address has changed, please contact

19

the Settlement Administrator or update your address online at the same website.

## What happens if I participate in the settlement?

You will release claims against Wells Fargo and the other Released Parties.

If you do not opt out, you will release the Released Class Claims against Wells Fargo and the other Released Parties. This means you cannot sue, continue to sue, or be part of any other legal action against Wells Fargo asserting claims raised in this case, or claims that could have been included in this case based on the same facts alleged in the amended complaint filed on [insert date]. That includes claims for unpaid overtime and minimum wages, claims related to meal and rest periods, claims related to wage statements, and claims for untimely payment of wages. The release only includes claims that accrued during your employment as an exempt-classified Premier Banker, Premier Banker 2, and Senior Branch Premier Banker between March 27, 2020 through [release date] for California.

If you cash your settlement check or accept an electronic payment, you will opt into the Settlement and will release the Released Collective Claims against Wells Fargo and the other Released Parties.

To review the complete language regarding the release to which you will be bound, please see the full settlement agreement. To get a copy of the settlement agreement please visit:

[insert QR code for mailing/link for email]

## When will I receive the money?

At the Court's hearing on [date], the Court will decide whether to finally approve the settlement. This date may change without further notice to class members. Please check [settlement website] to confirm that the date has not changed.

If the Court grants final approval, and the approval order is not appealed, settlement checks and electronic payments are anticipated to be distributed approximately two months after the Court grants

20

final approval.  Please be patient and update the Settlement Administrator if your contact information changes.

# Option 2: Exclude Yourself ("Opt Out")

## What if I don't want to be part of this settlement?

You can opt out of the settlement with respect to the class claims.  You cannot opt out of the PAGA portion of the settlement (if applicable).

If you do opt out, you will not receive payment (except any PAGA Payment if applicable) and cannot object to the settlement.  However, you will not be bound or affected by anything that happens in this case and may be able to file your own case.

## How do I opt out?

To opt out of the settlement, you must submit an opt out statement by [date] to the Settlement Administrator at their address listed below under "Key Resources."

You must include your name, address, telephone number, and a statement indicating your intent to opt out, such as "I opt out of the Wells Fargo wage and hour settlement."

# Option 3: Object to the Settlement

## What if I disagree with the settlement?

If you disagree with any part of the settlement but don't want to opt out, you may object.  You must give reasons why you think the Court should not approve the settlement and say whether your objection applies to just you, a part of the class, or the entire class.  The Court will consider your views.  The Court can only approve or deny the settlement — it cannot change the terms of the settlement.  You may, but don't need to, hire your own lawyer to help you.

To object, you must send a letter to the Settlement Administrator that:

21

1. is postmarked by [date];

2. includes the case name and number *Perez, et al. v. Wells Fargo Bank, N.A.*, et al., Case No. 24-cv-04077-SRM-AS;

3. includes your full name, address and telephone number, and email address;

4. states the reasons for your objection;

5. says whether either you or your lawyer intend to appear at the final approval hearing and your lawyer's name; and

6. your signature.

Mail the letter to the Settlement Administrator as listed below under "Key Resources."

# Key Resources

## How do I get more information?

This notice summarizes the settlement approval. There are more details in the case documents. To get a copy of the case documents or get answers to your questions:

- contact the lawyers who represent the class (information below)
- visit the case website at [website].

| Resource | Case Information |
|---|---|
| **Case website** | [website] |
| **Settlement Administrator** | [Case Administrator]<br>[Street Address]<br>[City, State, Zip Code]<br>[Phone Number] |
| **Class Counsel** | Outten & Golden LLP<br>[insert phone number]<br>WellsFargoSPB@outtengolden.com |

22

| | |
|---|---|
| | Hunter Pyle Law, PC |
| **Court (DO NOT CONTACT)** | U.S. District Court for the Central District of California<br>U.S. Courthouse<br>350 West First Street, Courtroom 5D<br>Los Angeles, CA 90012 |

# Exhibit C: Notice to Colorado Class Members



United States District Court for the Central District of California

*Perez, et al. v. Wells Fargo Bank, N.A., et al.*

Case No. 24-cv-04077-SRM-AS

# Notice of Proposed Class Action Settlement
## *Authorized by the U.S. District Court*

| You are receiving this notice because Wells Fargo's records show that you work or worked as an eligible employee in Colorado during the relevant period. | You are eligible to receive approximately $[net amount] from the proposed settlement described in this notice. | What you should do now:<br><br>1. Read this notice.<br><br>2. Decide whether to participate in the settlement. |
|---|---|---|

Important things to know:

- If you take no action, you will be bound by the settlement, and your rights will be affected.

- The Settlement was preliminarily approved by the Court on _____ but the Court still needs to finally approve the settlement.  Settlement payments will be made if the Court finally approves the settlement.  Please be patient.

- You can learn more at: [website].

25

# About This Notice

## What is this case about?

Four current and former employees filed a case, *Perez, et al. v. Wells Fargo Bank, N.A., et al.*, claiming that Wells Fargo misclassified Premier Bankers, Premier Banker 2s, and Senior Branch Premier Bankers as exempt from overtime protections and failed to pay proper overtime and other wages to those employees.

Wells Fargo denies that it did anything wrong. The Court has not decided this case in favor of either side. Both sides settled the claims to avoid the risk and expense of litigation.

You can learn more at: [website].

## Why did I get this notice?

Wells Fargo's records show that you are part of the proposed settlement class. People are eligible to be part of the settlement if they worked in California between March 27, 2020 and [release date], in Colorado between February 2, 2021 and [release date], and/or in any other state between February 22, 2021 and [release date] as exempt-classified Premier Bankers, Premier Banker 2s, and/or Senior Branch Premier Bankers.

The Court authorized this notice to you because you have the right to know about a proposed class and collective action settlement that affects your rights, and about all of your options, before the Court decides whether to finally approve the settlement. This notice explains the case, your legal rights, and what benefits are available.

## What do I do next?

Read this notice to understand the settlement. Then, decide if you want to:

| DO NOTHING AND | You will be sent a settlement check in the amount of approximately $[net amount] and you will |
|---|---|

| GET A PAYMENT | release claims against Wells Fargo as described in this Notice.<br><br>If you would prefer to receive your settlement payment electronically, you can choose to do so by visiting this website: [EMAIL VERSION: www.[website].com] / [MAILED VERSION: www.[website].com AND QR CODE]. |
|---|---|
| EXCLUDE YOURSELF ("OPT OUT") | You will receive no payment from this settlement and retain your right to bring another case against Wells Fargo about the same issues. |
| OBJECT | Tell the Court why you don't like the settlement, but remain a part of the settlement class and give up the ability to sue Wells Fargo for released claims as described in this Notice. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

## What are the most important deadlines?

Your deadline to object or opt out: **[date]**
Settlement approval hearing: **[date]**

# About the Lawsuit

## What does the settlement provide?

Without admitting any wrongdoing, Wells Fargo has agreed to pay $48,500,000 into a settlement fund.  This money is divided among (1) eligible employees; (2) attorneys' fees of up to one-third of the total settlement amount and reasonable expenses incurred in the lawsuit ($[AMOUNT]), as approved by the Court; (3) the cost of settlement administration ($[AMOUNT]); (4) a payment to eligible employees and the State of California to resolve claims under California's Private Attorneys General Act ("PAGA") ($[AMOUNT]); and (5) service awards for the people who brought this case to compensate them for their work on the case and the outcome achieved for the classes, as

27

approved by the Court ($[AMOUNT]).

Your share of the settlement, if you choose to participate, would be approximately $[net amount].

## How is my payment calculated?

The calculation of your payment depends on:

- Your weeks worked as an exempt-classified Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker between February 2, 2021 and [add release date] if you worked in Colorado.

- Whether you worked in California, Colorado, and/or another state.

The settlement administrator used information from Wells Fargo's records to calculate your payment based on the number of weeks you worked for Wells Fargo in one of the relevant positions during the relevant time periods. Eligible employees who worked in Colorado receive an additional amount for weeks worked because the damages available in the case are higher under Colorado law than under federal law.

Based on the allocation formula that has been approved by the Court, you are receiving a settlement payment of approximately $[NET AMOUNT] based on [insert workweeks] eligible workweeks. If you dispute the number of workweeks or pay periods used to calculate your payment, you must provide written documentation supporting your position to the Administrator by _____.

One-half (1/2) of your settlement payment will be treated as wages and subject to withholdings and deductions (paid on a W2) and one-half (1/2) will be treated as non-wage compensation with no taxes withheld (paid on a 1099). As a result of the settlement payments made to Class Members, Wells Fargo is not required to match contributions or include settlement payments as benefits-eligible earnings under any of Wells Fargo's benefits plans, bonus programs, or compensation policies.

28

*The lawyers cannot advise you on taxes associated with this payment. Please seek your own personal tax advice.*

## Do I have a lawyer in this case?

In a class action settlement, the Court appoints lawyers to represent the class and its members.  For this settlement, the Court has appointed the following lawyers, who are called "Class Counsel":

Michael J. Scimone
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
[insert phone number]
WellsFargoSPB@outtengolden.com

Adam Koshkin & Kaelyn Mahar
Outten & Golden LLP
1 California St., 12th Floor
San Francisco, CA 94111
[insert phone number]
WellsFargoSPB@outtengolden.com

Hunter Pyle
Bradan Litzinger
Hunter Pyle Law, PC
505 14th Street, Suite 600
Oakland, CA 94612

These are the lawyers who represented the plaintiffs in the case and negotiated the settlement.  The lawyers' fees will be paid from the settlement fund.  **You will not have to pay the lawyers directly.**  You do not need to retain your own lawyer, but you are free to do so at your own expense.

## Are there more details about the settlement?

This notice summarizes the proposed settlement.  More details are in the settlement agreement.  To get a copy of the settlement agreement please visit:

[insert QR code for mailing/link for email]

To get answers to your questions, contact the Settlement Administrator at [contact info] or Class Counsel at [contact info].

29

## What happens next in this case?

The Court will hold a fairness hearing to decide whether to finally approve the settlement.  The hearing will be held at:

**Where:** [Courthouse name and address].

**When:** [time] on [date].

Because the settlement of a class action decides the rights of all members of the proposed class, the Court must give final approval to the settlement before it can take effect.  Payments will only be made if the Court grants final approval of the settlement.

You don't have to attend, but you may at your own expense. You may also ask the Court for permission to speak and express your opinion about the settlement.  If the Court does not approve the settlement or the parties decide to end it, it will be void and the case will continue. The date of the hearing may change without further notice to members of the class.  To learn more and confirm the hearing date, go to [website].

# Option 1: Do Nothing, Get a Payment, and Release Claims

## How do I participate in the settlement?

**If you wish to participate in the settlement and receive payment, you do not need to take any action.**  If the Court grants final approval of the settlement, you will receive a settlement payment of approximately **$[NET AMOUNT]** by mail.

If you would like to receive your payment electronically, you may elect to do so by going to this website to select your payment option: [EMAIL VERSION: www.[website].com] / [MAILED VERSION: www.[website].com AND QR CODE].  If your mailing address has changed, please contact the Settlement Administrator or update your address online at the same website.

30

## What happens if I participate in the settlement?

You will release claims against Wells Fargo and the other Released Parties.

If you do not opt out, you will release the Released Class Claims against Wells Fargo and the other Released Parties. This means you cannot sue, continue to sue, or be part of any other legal action against Wells Fargo asserting claims raised in this case, or claims that could have been included in this case based on the same facts alleged in the amended complaint filed on [insert date]. That includes claims for unpaid overtime and minimum wages, claims related to meal and rest periods, claims related to wage statements, and claims for untimely payment of wages. The release only includes claims that accrued during your employment as an exempt-classified Premier Banker, Premier Banker 2, and Senior Branch Premier Banker between February 2, 2021 and [release date] for Colorado.

If you cash your settlement check or accept an electronic payment, you will opt into the Settlement and will release the Released Collective Claims against Wells Fargo and the other Released Parties.

To review the complete language regarding the release to which you will be bound, please see the full settlement agreement. To get a copy of the settlement agreement please visit:

[insert QR code for mailing/link for email]

## When will I receive the money?

At the Court's hearing on [date], the Court will decide whether to finally approve the settlement. This date may change without further notice to class members. Please check [settlement website] to confirm that the date has not changed.

If the Court grants final approval, and the approval order is not appealed, settlement checks and electronic payments are anticipated to be distributed approximately two months after the Court grants final approval. Please be patient and update the Settlement Administrator if your contact information changes.

31

# Option 2: Exclude Yourself ("Opt Out")

## What if I don't want to be part of this settlement?

You can opt out of the settlement with respect to the class claims. You cannot opt out of the PAGA portion of the settlement (if applicable).

If you do opt out, you will not receive payment (except any PAGA Payment if applicable) and cannot object to the settlement. However, you will not be bound or affected by anything that happens in this case and may be able to file your own case.

## How do I opt out?

To opt out of the settlement, you must submit an opt out statement by [date] to the Settlement Administrator at their address listed below under "Key Resources."

You must include your name, address, telephone number, and a statement indicating your intent to opt out, such as "I opt out of the Wells Fargo wage and hour settlement."

# Option 3: Object to the Settlement

## What if I disagree with the settlement?

If you disagree with any part of the settlement but don't want to opt out, you may object. You must give reasons why you think the Court should not approve the settlement and say whether your objection applies to just you, a part of the class, or the entire class. The Court will consider your views. The Court can only approve or deny the settlement — it cannot change the terms of the settlement. You may, but don't need to, hire your own lawyer to help you.

To object, you must send a letter to the Settlement Administrator that:

1. is postmarked by [date];

2. includes the case name and number *Perez, et al. v. Wells Fargo Bank, N.A.*, et al., Case No. 24-cv-04077-SRM-AS;

3. includes your full name, address and telephone number, and email address;

4. states the reasons for your objection;

5. says whether either you or your lawyer intend to appear at the final approval hearing and your lawyer's name; and

6. your signature.

Mail the letter to the Settlement Administrator as listed below under "Key Resources."

# Key Resources

## How do I get more information?

This notice summarizes the settlement approval. There are more details in the case documents. To get a copy of the case documents or get answers to your questions:

- contact the lawyers who represent the class (information below)
- visit the case website at [website].

| Resource | Case Information |
|---|---|
| **Case website** | [website] |
| **Settlement Administrator** | [Case Administrator]<br>[Street Address]<br>[City, State, Zip Code]<br>[Phone Number] |
| **Class Counsel** | Outten & Golden LLP<br>[insert phone number]<br>WellsFargoSPB@outtengolden.com |

33

| | |
|---|---|
| | Hunter Pyle Law, PC |
| **Court (DO NOT CONTACT)** | U.S. District Court for the Central District of California<br>U.S. Courthouse<br>350 West First Street, Courtroom 5D<br>Los Angeles, CA 90012 |

# Exhibit D: Collective notice



United States District Court for the Central District of California

*Perez, et al. v. Wells Fargo Bank, N.A., et al.*

Case No. 24-cv-04077-SRM-AS

# Notice of Proposed Collective Action Settlement

## *Authorized by the U.S. District Court*

| You are receiving this notice because Wells Fargo's records show that you work or worked as an eligible employee during the relevant period. | You are being offered $[net Amount] in exchange for a release of legal claims as part of the settlement. | What you should do now: |
|---|---|---|
| | | 1. Read this notice. |
| | | 2. Decide whether to cash the enclosed check and release claims. |

Important things to know:

- A settlement check of $[net Amount] is enclosed.

- The enclosed check expires on [INSERT DATE THAT IS 180 DAYS FROM MAILING DATE].

36

# About This Notice

## What is this case about?

Four current and former employees filed a case, *Perez, et al. v. Wells Fargo Bank, N.A., et al.*, claiming that Wells Fargo misclassified Premier Bankers, Premier Banker 2s, and Senior Branch Premier Bankers as exempt from overtime protections and failed to pay proper overtime and other wages to those employees.

Another former employee filed a similar case seeking penalties under California's Private Attorneys General Act ("PAGA") based on the same allegation. That employee has since been added to this case for purposes of this settlement.

Wells Fargo denies that it did anything wrong.  The Court has not decided this case in favor of either side.  Both sides settled the claims to avoid the risk and expense of litigation.

You can learn more at: [website].

## Why did I get this notice?

Wells Fargo's records show that you are eligible to participate in the settlement.  People are eligible to be part of the settlement if they worked in California between March 27, 2020 and [release date], in Colorado between February 2, 2021 and [release date], and/or in any other state between February 22, 2021 and [release date] as exempt-classified Premier Bankers, Premier Banker 2s, and/or Senior Branch Premier Bankers.

The Court authorized this class and collective action settlement.  This notice explains the case, your legal rights, and what benefits are available.

## What do I do next?

Read this notice to understand the settlement.  Then, decide if you want to:

| ACCEPT PAYMENT AND RELEASE CLAIMS | Accept the settlement payment. Cash or deposit the enclosed check.  You will be bound by the release. |
|---|---|
| DO NOTHING | Decline the settlement payment and choose not to cash or deposit the enclosed check.  You will not be bound by the release. |

Read on to understand the specifics of the settlement and what each choice would mean for you.

# About the Lawsuit

## What does the settlement provide?

Without admitting any wrongdoing, Wells Fargo agreed to pay $48,500,000 into a settlement fund.  This money is divided among (1) eligible employees; (2) attorneys' fees of [insert approved amount] and $[expenses approved] in expenses incurred in the lawsuit, approved by the Court; (3) the cost of settlement administration ($[AMOUNT]); (4) a payment to eligible employees and the State of California to resolve claims under California's Private Attorneys General Act ("PAGA") ($[AMOUNT]); and (5) service awards for the people who brought this case to compensate them for their work on the case and the outcome achieved for the classes ($[AMOUNT]), approved by the Court.

If you worked for Wells Fargo as an exempt-classified Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker between February 22, 2021 and [add release date], you are eligible to be part of the settlement by cashing the enclosed check and releasing your claims.

## How was my payment calculated?

The amount of your payment depends on:

* Your weeks worked as an exempt-classified Premier Banker, Premier Banker 2, and/or Senior Branch Premier Banker between February 22, 2021 and [add release date].

- Whether you worked in California, Colorado, and/or another state.

The Settlement Administrator used information from Wells Fargo's records to calculate your payment based on the number of weeks you worked for Wells Fargo in one of the relevant positions during the relevant time periods.  Eligible employees who worked in California and/or Colorado received an additional amount for each week worked in either of those states because the damages available in the case are higher under California and Colorado law than under federal law.

Based on the allocation formula that has been approved by the Court, you are receiving a settlement payment of $[NET AMOUNT] based on [insert workweeks] eligible workweeks.

One half (1/2) of your settlement payment is treated as wages and subject to withholdings and deductions (paid on a W2) and one half (1/2) is treated as non-wage compensation with no taxes withheld (paid on a 1099).  As a result of the settlement payments made to Class Members, Wells Fargo is not required to to match contributions or include settlement payments as benefits-eligible earnings under any of Wells Fargo's benefits plans, bonus programs, or compensation policies.

*The lawyers cannot advise you on taxes associated with this payment. Please seek your own personal tax advice.*

## Do I have a lawyer in this case?

In a collective settlement, the Court appoints lawyers to represent the collective and its members.  For this settlement, the Court has appointed the following lawyers, who are called "Class/Collective Counsel":

Michael J. Scimone
Outten & Golden LLP
685 Third Avenue, 25th Floor
New York, New York 10017
[insert phone number]
WellsFargoSPB@outtengolden.com

Adam Koshkin & Kaelyn Mahar
Outten & Golden LLP
1 California St., 12th Floor
San Francisco, CA 94111
[insert phone number]
WellsFargoSPB@outtengolden.com

39

Hunter Pyle
Bradan Litzinger
Hunter Pyle Law, PC
505 14th Street, Suite 600
Oakland, CA 94612

These are the lawyers who represented the plaintiffs in the case and negotiated the settlement.  The lawyers' fees will be paid from the settlement fund.  **You will not have to pay the lawyers directly.**  You do not need to retain your own lawyer, but you are free to do so at your own expense.

## Are there more details about the settlement?

This notice summarizes the settlement.  More details are in the settlement agreement.  To get a copy of the settlement agreement please visit:

[insert QR code]

To get answers to your questions, contact the Settlement Administrator at [contact info] or Class Counsel at [contact info].

# Option 1: Accept the Settlement By Cashing the Enclosed Check

## How do I participate in the settlement?

A check is enclosed.  To participate in the settlement, please sign and cash or deposit the settlement check prior to **[insert date that is 180 days from mailing or 180 days from remailing]**.

If you cash or deposit your settlement check, you will release your claims, which means you cannot sue Wells Fargo or any of the Released Parties for the claims released by the Settlement.  A full copy of the release to which you will be bound is available in the settlement agreement.

40

If you have questions about your settlement check, you may contact the Settlement Administrator at:

[Settlement Administrator contact info]

# Option 2: Do Nothing

## What if I don't want to be part of this settlement?

You do not have to be part of this settlement.  If you do not want to be part of this settlement, you should do nothing.

If you do NOT deposit or cash the enclosed check, you will not be a part of the settlement or release anything.

## What are the consequences of doing nothing?

If you do nothing, you will not get any money.  You will not be bound by the release and will retain your right to file your own case.

# Key Resources

## How do I get more information?

This notice summarizes the settlement approval. There are more details in the case documents. To get a copy of the case documents or get answers to your questions:

- contact the lawyers who represent the class/collective (information below)
- visit the case website at [website].

| Resource | Case Information |
|---|---|
| Case website | [website] |
| Settlement | [Case Administrator] |

41

| | |
|---|---|
| **Administrator** | [Street Address]<br>[City, State, Zip Code]<br>[Phone Number] |
| **Class/Collective Counsel** | Outten & Golden LLP<br>[insert phone number]<br>WellsFargoSPB@outtengolden.com<br><br>Hunter Pyle Law, PC |
| **Court (DO NOT CONTACT)** | U.S. District Court for the Central District of California<br>U.S. Courthouse<br>350 West First Street, Courtroom 5D<br>Los Angeles, CA 90012 |
| | |

# Exhibit E: Notice email

Subject: Wells Fargo – Notice of Settlement

You are receiving this email because Wells Fargo's records show that you are eligible to participate in a proposed settlement against Wells Fargo.  Additional information is contained in the attached Notice.  To learn more about the settlement, or to elect electronic payment, please visit [website].  For questions about the settlement, contact the Settlement Administrator at [administrator email and phone number] or Outten & Golden LLP at (212) 245-1000 or WellsFargoSPB@outtengolden.com and mention the Wells Fargo Settlement.

# Exhibit F: Notice text

You are receiving this text because Wells Fargo's records show that you are eligible to participate in a proposed settlement against Wells Fargo.  To learn more about the settlement, or to elect electronic payment, please visit [website].  For questions about the settlement, contact the Settlement Administrator at [administrator email and phone number] or Outten & Golden LLP at (212) 245-1000 or WellsFargoSPB@outtengolden.com and mention the Wells Fargo Settlement.

# Exhibit G: Class reminder postcard

## Class Action Notice
*Wells Fargo overtime settlement*

We sent you a [$AMOUNT] check for the settlement of claims against Wells Fargo.

➤ Our records show that you have not cashed your check.

➤ To get money, you must cash your check by [INSERT 180 DAYS AFTER INITIAL MAILING OR REMAILING].

**Key things to know:**

- If you do not cash your check by [180 days from original mailing or remailing], you will still release claims against Wells Fargo and the other Released Parties, but you will not receive any compensation.
- Please contact [settlement administration contact], if you do not have your check, or Class Counsel if you have questions about your rights at [insert phone #] or WellsFargoSPB@outtengolden.com.

## You are entitled to money from a legal settlement.

<<MAIL ID>>

<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

45

# Exhibit H: Collective reminder postcard

## Collective Action Notice

*Wells Fargo overtime settlement*

| | | |
|---|---|---|
| We sent you a [$AMOUNT] check for the settlement of claims against Wells Fargo. | Our records show that you have not cashed your check. | To get money, you must cash your check by [INSERT 180 DAYS AFTER INITIAL MAILING OR REMAILING]. |

**Key things to know:**

- If you do not cash your check by [180 days from original mailing or remailing], you cannot participate in this settlement or receive money. You will not be bound by the terms of the settlement if you do not cash your check.
- Please contact [settlement administration contact], if you do not have your check, or Class Counsel if you have questions about your rights [insert phone #] or WellsFargoSPB@outtengolden.com.

## You are entitled to money from a legal settlement.

<<MAIL ID>>

<<NAME 1>>
<<NAME 2>>
<<ADDRESS LINE 1>>
<<ADDRESS LINE 2>>
<<ADDRESS LINE 3>>
<<ADDRESS LINE 4>>
<<ADDRESS LINE 5>>
<<CITY, STATE ZIP>>
<<COUNTRY>>

46

# Exhibit I: Reminder email

Subject: Wells Fargo – Notice of Settlement

Recently you should have received a mailing advising you that you are eligible to participate in a class and collective action settlement, including a settlement check. To receive money as part of the settlement, you must sign and cash or deposit the settlement check prior to [insert date that is 180 days from mailing]. If you did not receive or no longer have the notice and check, contact the settlement administrator to request a reissue at [administrator email]. For questions about the settlement, contact the Settlement Administrator at [administrator email and phone number] or Outten & Golden LLP at (212) 245-1000 or WellsFargoSPB@outtengolden.com and mention the Wells Fargo Settlement.

47

# Exhibit J: Reminder text

Wells Fargo Premier Banker Settlement: You should have received a mailing advising you that you are eligible to participate in a class and collective action settlement, including a settlement check. To receive money as part of the settlement, you must sign and cash or deposit the settlement check prior to [insert date that is 180 days from mailing]. If you did not receive or no longer have the notice and check, contact the settlement administrator to request a reissue at [administrator email]. For questions about the settlement, contact the Settlement Administrator at [administrator email and phone number] or Outten & Golden LLP at (212) 245-1000 or WellsFargoSPB@outtengolden.com and mention the Wells Fargo Settlement.

48